The City of Terre Haute *v.* Hudnut *et al.*

———◆———

No. 12,893.

## The City of Terre Haute *v.* Hudnut et al.

Municipal Corporation.—*Sewer.*—*Negligence.*—A municipal corporation is liable for negligence in devising the plan of a sewer constructed by it, as well as for negligence in the manner of doing the work.

Same.—*Skill Required in Plan for Sewer.*—Where the authorities of a municipal corporation undertake the work of constructing a sewer, or system of sewers, it is their duty to use reasonable care to procure the services of men skilled in such matters to prepare the plans for the same, and if there is a lack of such care, by reason of which the plans are defective, they are guilty of negligence, for which the corporation must answer in case of damage resulting from such defective plans.

Same.—*When not Liable for Defective Sewer.*—Where, however, reasonable care is exercised by the municipal authorities in securing the employment of fair care and skill in the preparation of plans for a sewer, and ordinary care is used to see that such skill is brought into exercise, then there is no negligence, and can be no liability, although when the plan is carried into effect a defect may be developed which destroys or impairs its efficiency.

Same.—*Evidence.*—*Reasonable Care.*—*Consultations With Experts.*—Where a recovery is sought for injuries caused by a defective sewer, or by a sewer of inadequate size, the defect or insufficiency being caused by a defect in the plan, it is competent for the municipal corporation to show that reasonable care was exercised in the employment of a competent engineer or expert to prepare the plan, and that ordinary care was used in seeing to it that he exercised skill, and, to this end, evidence of

The City of Terre Haute *v.* Hudnut *et al.*

consultation with experts, so employed, or of examination of plans by councilmen, is competent, though not in writing.

EVIDENCE.— *Weight of not Determined on Question of Admissibility.—Admissible if Tending to Support Theory.*—A court can not, on a question of the admissibility of evidence, determine its weight; but if there is any evidence tending to support the theory which makes the evidence competent, whether it be direct or indirect, the offered evidence must be admitted when presented in proper form.

SAME.—*Competent and Incompetent Must be Separated.*—Where, by a single question or proposition, evidence partly competent and partly incompetent is offered, there is no error in excluding it.

SAME.—*Expert Witness.—Qualifications of.*—No precise knowledge is required of an expert witness; it is enough if the witness shows such an acquaintance with the subject as to qualify him to give an opinion; and in an action to recover damages for injury to a mill, a witness, who is shown to be one of the owners of the mill, engaged in operating it, and to have knowledge of its structure and the injury, is *prima facie* competent to give an opinion as to the length of time required to repair it.

SAME.—*Negligence. — Interruption of Business. — Profits as an Element of Damages.*—Where an established business of a permanent character, as a mill for the manufacture of grain into meal, hominy or the like, is suspended by an overflow, and machinery used therein so injured that in order to make repairs a cessation of business is necessary, the net earnings or profits of the present and past are competent to be considered by the jury in estimating the owner's damages during the period that his business is so interrupted.

From the Vigo Superior Court.

*B. E. Rhoads, E. F. Williams, T. A. Foley, H. C. Pugh* and *H. B. Jones,* for appellant.

*C. F. McNutt, S. B. Davis* and *S. C. Davis,* for appellees.

ELLIOTT, J.—The complaint of the appellees seeks to recover damages for injuries alleged to have been caused by the negligence of the municipal authorities in constructing and maintaining sewers.

One of the principal questions argued by counsel arises on the ruling excluding evidence offered by the appellant. The purpose of appellant in offering this evidence was to prove that the defect in the system of sewers was in the plan, and not in the work of executing it, and that the defect was not

the result of negligence, but of an error of judgment. It has long been the law in this State that a municipal corporation is liable for negligence in devising the plan of a sewer constructed by it, as well as for negligence in the manner of doing the work. Of course, as long as no work is done under the plan no liability can arise, nor can a liability exist where there is nothing more than a failure to adopt a plan. But where a plan is adopted and carried into execution, then there is a liability if there was negligence in devising the plan. It is the duty of the municipal corporation to exercise reasonable care in providing a plan, as well as in doing the work under it.

In the case of *City of North Vernon* v. *Voegler*, 103 Ind. 314, the cases were collected, and it was said, among other things, that " the doctrine is not only sustained by authority, but is sound in principle. Suppose that the common council of a city determine to build a sewer, and cover it with reeds, can it be possible that the corporation can escape liability on the ground that the common council erred in devising a plan ? Or, to take such a case as *City of Indianapolis* v. *Huffer*, *supra*, suppose the common council undertake to conduct a large volume of water through a culvert capable of carrying less than one-tenth of the water conducted to it by the drains constructed by the city, can responsibility be evaded on the ground of an error of judgment? Again, to take an illustration from a somewhat different class of cases, suppose the common council to devise a plan for a bridge that will require timbers so slight as to give way beneath the tread of a child." From the rule expressed in so many of our cases we can not depart, for it is not only well sustained by authority, but is right in principle. Morrill City Neg. 86.

While our cases have always held that municipal corporations are liable for negligence in devising a plan, they have from first to last declared that there is no liability unless there is negligence. *Rice* v. *City of Evansville*, 108 Ind. 7 (58 Am. R. 22) ; *City of North Vernon* v. *Voegler*, *supra* ; *City of*

*Crawfordsville* v. *Bond*, 96 Ind. 236; *City of Evansville* v. *Decker*, 84 Ind. 325 (43 Am. R. 86); *Cummins* v. *City of Seymour*, 79 Ind. 491 (41 Am. R. 618); *Weis* v. *City of Madison*, 75 Ind. 241 (39 Am. R. 135); *City of Indianapolis* v. *Huffer*, 30 Ind. 235; *Stackhouse* v. *City of Lafayette*, 26 Ind. 17 (89 Am. Dec. 450); *City of Logansport* v. *Wright*, 25 Ind. 512.

It is, therefore, a question of paramount importance whether the municipal authorities exercised due care in securing a plan, for if they did exercise such care, then their error is one of judgment which can not create a liability. It is, however, negligence for men unskilled in the business of preparing plans for sewers to act upon their own judgment in cases where skill is required. *Bradbury* v. *Goodwin*, 108 Ind. 286. It is their duty to use reasonable care to procure the services of men skilled in such affairs, and if they fail to exercise this care they are guilty of negligence for which the corporation must answer. Undertaking to exercise judgment without skill in a matter which requires skill is not a mere error of judgment, but it is negligence. This is a familiar principle pervading all branches of jurisprudence. A man who undertakes as a lawyer to conduct an action at law without possessing skill is negligent; so, too, one who undertakes to treat a sick or wounded man as a physician or surgeon without possessing a fair degree of professional knowledge is guilty of a breach of duty. A mechanic who undertakes to build a house is liable in damages if, through ignorance, he does his work unskilfully. Negligence, according to Judge COOLEY's definition, is "The failure to observe, for the protection of the interest of another person, that degree of care, precaution and vigilance which the circumstances justly demand." Cooley Torts, 630; *Brown* v. *Congress, etc., St. R. W. Co.*, 49 Mich. 153.

If a municipal corporation undertakes the work of constructing a system of sewers, in a case where the assistance

of men skilled in such matters is essential to secure sewers that shall carry off the water conducted into them, without using reasonable care to procure such assistance, there is an absence of "the precaution and vigilance which the circum-stances justly demand." If, however, the municipal authori-ties do exercise reasonable care in securing such assistance, and do exercise reasonable care in securing the employment of fair care and skill, they are not guilty of negligence. If, after bringing into exercise reasonable care to select skilled persons, and in securing the exercise of their skill, there is still a defect in the system, it must be attributed, not to neg-ligence, but to an error of judgment. The case is strictly analogous to that of a railroad company sought to be held liable by one of its employees. In such cases it is uniformly held, that if ordinary care is used in the selection of the co-servants the company is not liable, although it may turn out that the co-servant was not capable of performing the duties entrusted to him. So, here, if the municipal corporation uses reasonable care to secure and put into exercise the services of competent engineers, it ought not to be held lia-ble, although it does turn out that a mistake was made. It would impose a burden upon municipal corporations that no principle of right or justice warrants to hold them account-able where they have exercised reasonable care to secure a perfect and an adequate system of sewerage.

The principle which we are endeavoring to bring out is thus declared in *Johnston* v. *District of Columbia*, 1 Mackey, 427 : " In the next place, a mere error of judgment in the construction of such work does not seem, on the authorities, to be a ground of action in the absence of carelessness in the selection of a plan, or the employment of proper agents to devise and execute it." A similar line of reasoning is pursued in *Van Pelt* v. *City of Davenport*, 42 Iowa, 308, where it was said : " The city can not be held liable unless for some neglect or omission of duty or negligence in its performance." At an-other place in the same opinion it was said : " As the city

must act through the agency of others, it was its duty to select a competent engineer. When such selection is made, the city has in that regard discharged its duty, and no direct negligence or omission is attributable to it. If a competent engineer acts in good faith in drafting the plans of a culvert, and honestly believes that he is making it large enough to accomplish the desired purpose, then no negligence of the servant is attributable to the principals. If he is sufficiently competent and makes a mistake after the honest exercise of his best judgment, it is such a mistake as is inseparable from human action. The making of such mistake can not be attributed to negligence, for negligence is the failure to exercise ordinary care."

It is possible for a common council to act negligently in devising a plan, as well as in any other matter. If that body undertakes to prosecute a public work which requires a plan, and that plan can only be devised and prepared by skilful or experienced men, it would be negligence for it to undertake the work without exercising reasonable care to secure the assistance of such men. A prudent man certainly would not undertake a work of that character without the aid of competent men, and a city is held to substantially the same degree of care as individuals. *Lehn* v. *City of San Francisco,* 66 Cal. 76; *Barnes* v. *District of Columbia,* 91 U. S. 540.

Deliberation on the part of the common council is futile unless the members have a fair knowledge of the matter which forms the subject of their deliberation. Men may deliberate to the end of time without accomplishing any useful purpose unless they possess knowledge of the thing they are considering. If councilmen are not skilled in devising plans for sewers, no length of time spent in deliberation can establish the fact that due care was exercised. Due care implies the employment of such means as will secure knowledge, not a deliberation without knowledge. Men who take no means to secure knowledge essential to intelligent deliberation do not exercise that care which the law requires. If,

in a case like this, councilmen proceed without knowledge, no matter how slowly, they do not exercise care; but if they use reasonable means to secure knowledge, and with deliberate care act upon it when secured, they are not negligent. If reasonable care is used to secure the preparation of plans by competent men, and ordinary care is used to see that the skill of the engineer or expert is brought into exercise, then there is no negligence, and can be no liability, although, when the plan is carried into effect, a defect may be developed which destroys or impairs its efficiency.

It is the law that where a municipal corporation collects in one channel a great body of water it must use reasonable care to provide an outlet for it. *Rice* v. *City of Evansville, supra; Lipes* v. *Hand,* 104 Ind. 503; *City of Evansville* v. *Decker,* 84 Ind. 325 (43 Am. R. 86); *Weis* v. *City of Madison, supra; City of Indianapolis* v. *Lawyer,* 38 Ind. 348.

But, while we concur with the appellees' counsel upon this point, it does not necessarily lead to the conclusion that evidence showing care in securing a plan was not competent. This is so, because the theory of the appellant is that the cause of the injury was a defect in the plan, and that the defect was the failure to provide for a sufficient number of catch-basins. There was some evidence tending to support this theory, and this was enough to render the evidence competent. A court can not, on a question of the admissibility of evidence, determine the weight of evidence; but if there is any evidence tending to support the theory which makes the evidence competent, whether it be direct or indirect, the offered evidence must be admitted when made in proper form.

Where a recovery is sought for injuries caused by a defective sewer, or by a sewer of inadequate size, and the defect or insufficiency is caused by a defect in the plan, it is competent for the municipal corporation to show that reasonable care was exercised in employing a competent engineer or expert to prepare the plan, and that ordinary care was used in

seeing to it that he did exercise skill and care. We do not mean, of course, that these things may be proved by a mere statement of conclusions, but that they may be proved by evidence of the specific facts leading to those conclusions. In this instance, if the offer had been properly made it would have been the duty of the trial court to allow evidence of the fact that reasonable care was used by the city in procuring the services of a competent engineer or expert, and in securing the exercise of his skill.

· Evidence of consultation with experts employed to prepare plans, or of the examination of plans by councilmen, may be competent, although not in writing. It is not every act of a councilman that must be put on record. Councilmen in examining the locality where public improvements are to be made, or in examining plans, act in an official capacity, but these acts need not necessarily be exhibited in. the record.

It is probably true that some of the evidence on the question under immediate discussion offered by the appellant was competent, but some of it—as for instance, some general conclusions where there should have been specific facts—was clearly incompetent, and, as the evidence was offered without separating the good from the bad, there was no available error in excluding it. *Louisville, etc., R. W. Co.* v. *Falvey,* 104 Ind. 409; *Cuthrell* v. *Cuthrell,* 101 Ind. 375; *Wolfe* v. *Pugh,* 101 Ind. 293; *Elliott* v. *Russell,* 92 Ind. 526.

For another reason there was no such error, and that is, because there were no specific questions asked for the purpose of eliciting the testimony alleged to have been improperly rejected. *Higham* v. *Vanosdol,* 101 Ind. 160; *Judy* v. *Citizen,* 101 Ind. 18; *Ralston* v. *Moore,* 105 Ind. 243; *Woolery* v. *Louisville, etc., R. W. Co.,* 107 Ind. 381; *Seavey* v. *Walker,* 108 Ind. 78.

One of the appellees was permitted to state the length of time it would require to repair the injury done by the overflow. It was objected that this testimony was incom-

petent because the witness was not shown to be an expert qualified to give an opinion. Conceding, but not deciding, that the question was one which none save an expert could properly answer, we think there was no error in admitting the testimony. The witness was, as the evidence shows, one of the owners of the mill, engaged in operating it, and had knowledge of the structure and its injury, and we regard this as *prima facie* sufficient to qualify him. No precise knowledge is required; it is enough if the witness shows such an acquaintance with the subject as to qualify him to give an opinion. *Colee* v. *State,* 75 Ind. 511; *Goodwin* v. *State,* 96 Ind. 550; *Sage* v. *State,* 91 Ind. 141, and cases cited. The value of his testimony depends, of course, upon the extent of his knowledge, but this does not necessarily determine its competency.

On the ruling of the court admitting testimony of the profits of the plaintiff's business arises another important question. This question is both important and difficult, and, in order to bring it clearly into view, it is necessary to refer to some of the evidence touching the matter out of which it emerges. The appellees were the owners of a large mill, and were engaged in the business of manufacturing and selling the products of corn. For this purpose their mill was equipped with machinery and appliances of great value. The water which was thrown upon their premises caused them to stop business for twelve days. The injury done by the water was so extensive as to render it necessary to make costly repairs. To make these repairs would require a cessation of business for sixty days. At the time of the trial these repairs had not been made, but they were required, as we must assume for our present purpose, and it was the intention of the appellees to make them. One of the appellees, having testified that the repairs were rendered necessary by the injury done by the water, and that it would require sixty days to make them, was asked by his counsel this question: "What are the reasonable earnings of that mill per day now?"

The witness answered: "There are times during the year when our net earnings are larger than at others." He was then asked: "What would be a fair average?" and he answered: "One hundred and fifty dollars per day."

It appears from the cross-examination that the term "net earnings," as used by the witness, meant profits, and this is the legal meaning of the term. St. John v. Erie Railway Co., 22 Wall. 136.

It will be observed that the question asked does not refer to future profits, but to the average profits that the mill was then earning or had earned. The testimony upon this question was, it is important to keep in mind, as to the profits that the mill had earned and was then earning. This is an important factor in the investigation, and distinguishes the case very clearly and very distinctly from those cases in which it is held that evidence of speculative prospective profits is not competent. The question here is, had the appellees a right to prove what profits their mill had earned in the past, and what it was earning in the then present? There was no attempt to prove what it might earn in the future. What exists in the present, or has existed in the past, can not be considered a matter of speculation. It is not to be forgotten that the mill was and had been in active operation, with a known and established business. The case is for this reason not at all like one in which the business has not been in existence. It is this fact which distinguishes the case under examination from the case of Western Gravel Road Co. v. Cox, 39 Ind. 260, upon which the appellant places so much stress. In that case the profits were entirely prospective; they were neither matters of the present nor the past, but were wholly of the future. The fact that the profits were of the present and the past distinguishes this case from the rule asserted in Glass v. Garber, 55 Ind. 336, that merely speculative profits can not be taken into consideration in estimating damages. Indeed, the fair deduction from that case is that known profits may be taken into consideration, for it was

there said : "And we, think, if, in consequence of the facts averred, the complainant's house and fixtures therein and place of business became useless to him for a time, that it is a fair element for a jury to consider, in estimating damages." The decision in *Masterton* v. *Village of Mt. Vernon*, 58 N. Y. 391, does support the appellant's theory, for it does decide that evidence of past profits is not competent, but the case is not well considered, and, as we shall presently show, is not in line with the current of decision in the same court, nor with the current of authority elsewhere.

The last of the cases cited by the appellant on this point is *Griffin* v. *Colver*, 16 N. Y. 489. That case holds that future profits, speculative and contingent in their nature, are not to be considered in estimating damages. If it stopped at that point it would do the appellant no good, but it goes further, and decides that "The general rule is, that the party injured is entitled to recover all his damages, including gains prevented as well as losses sustained, provided they are certain." To us it seems that the extract we have made is the law, and is in favor of the appellees upon the question of the admissibility of evidence of past and present profits. These are certain ; one is in the domain of the past, the other in that of the present ; neither in that of the future.

Turning to the authorities upon the general question, and prefacing our discussion of them by the statement that we are now immediately concerned with the question whether evidence of profits earned in the past and in the present is competent, not what its weight or effect is, we lay down the general rule that the evidence is competent.

In the well considered and strongly reasoned case of *Simmons* v. *Brown*, 5 R. I. 299, it was held, in a case where a mill for the manufacture of cotton goods was injured by an overflow, that evidence of profits earned was competent. The court, in the course of the opinion, said : "For this reason, evidence as to profits, as a general rule, is rejected ; because, generally, they are uncertain and contingent ; depending upon

other circumstances than the injurious act of the defendants, and not the natural result of it. Nevertheless, the general rule is subject to many exceptions; and it will be seen from the cases upon this subject, that wherever the loss of profits is the natural and necessary result of the act charged,—such as the party probably would have made, not what by chance he might have made, but what any prudent man must naturally have made,—evidence has been, if not always, most usually, admitted as to them."

*White* v. *Moseley*, 8 Pick. 356, is in principle the same as the case from which we have quoted, and it was held that evidence of loss of profits was competent.

In *Chandler* v. *Allison*, 10 Mich. 460, a landlord wrongfully destroyed a store in the possession of a tenant, and it was held that for loss consequent upon the interruption of his business the tenant might recover. That case came again before the Supreme Court of Michigan, and the ruling on the first appeal was adhered to, and a very forcible opinion was written by CHRISTIANCY, J., in which, among other things, it was said : " To confine the plaintiff to the difference between the rent paid and the fair rental value of the premises to others, for the balance of the term, would be but a mockery of justice. To test this, suppose the plaintiff is actually paying that full rental value, and has established a business upon the premises, the clear gains or profits of which have been an average of one thousand dollars per year ; and he is ousted from the premises and this business entirely broken up for the balance of the term ; can he be allowed to recover nothing but six cents damages for his loss ? " *Allison* v. *Chandler*, 11 Mich. 542.

The case of *Shafer* v. *Wilson*, 44 Md. 268, is strongly in point. In that case the defendant had injured the plaintiff's premises and broken up his business. On the trial the plaintiff was asked this question : " What were about the usual profits of your business prior to the commencement of digging by Shafer ? " and the answer was, " From fifteen to

twenty dollars per day." This evidence was held competent. In *Ingram* v. *Lawson*, 6 Bing. (N. Cas.) 212, the defendant was sued for libel in publishing a statement that the plaintiff's vessel was unseaworthy, and it was held that the loss of the profits of the voyage was a proper ingredient to be considered in estimating damages, the court saying: " The jury must have some mode of estimating the damages, and they could not be in a condition to do so, unless they knew something of the nature of the plaintiff's business, and the general return from his voyages."

The cause of action in *Tarleton* v. *McGawley*, 1 Peake N. P. C. 205, was for a tort in firing upon some negroes near the plaintiff's trading post on the coast of Africa, and thus deterring them from trading with him, and it was held that the loss of profits consequent upon an interruption of his business was a proper matter for the consideration of the jury.

The case of *Lacour* v. *Mayor of New York*, 3 Duer, 406, was, in its main features, very like the case we have in hand, and it was held that the plaintiff was entitled to recover for loss of profits during an enforced suspension of business.

In *St. John* v. *Mayor*, 6 Duer, 315, it was held that loss of profits resulting from an interruption of plaintiff's business should be taken into consideration in computing the damages. The case just referred to was expressly approved in *Walter* v. *Post*, 6 Duer, 363 (373), and it was said: " In actions to recover against a *tort-feasor*, the loss of profits may be taken into view in estimating the damages."

In the case of *Chapman* v. *Kirby*, 49 Ill. 211, the plaintiff sued to recover damages for the tort of the defendants, in wrongfully depriving his mill of steam power, and it was held that the loss of profits should be taken into consideration. The court there said: " And of what does this loss consist, but the profits that would have been made had the act not been performed by appellants? And to measure such damages, the jury must have some basis for an estimate, and what more reasonable than to take the profits for a reasonable

period next preceding the time when the injury was inflicted, leaving the other party to show that by depression in trade, or other causes, they would have been less? Nor can we expect, that, in actions of this character, the precise extent of the damages can be shown by demonstration. But by this means they can be ascertained with a reasonable degree of certainty. Nor do the views here expressed conflict with the case of *Green* v. *Williams*, 45 Ill. 206, as in that case the lessee had not entered upon the term; had not built up or established a business, and had not suffered such a loss."

The adjudged cases very clearly show that, in actions to recover for damages resulting from a tort, a more liberal rule in favor of the plaintiff prevails than in actions to recover for a loss resulting from a breach of contract; yet, in the latter class of cases, the overwhelming weight of authority supports the doctrine that profits, when not entirely speculative, may be taken into account.

This subject received a careful consideration in the case of *Wakeman* v. *Wheeler, etc., Co.*, 101 N. Y. 205 (54 Am. Rep. 676), and it was held that profits were to be taken into account in ascertaining the damages resulting from a breach of contract, and the decisions of the Court of Appeals in the cases of *Taylor* v. *Bradley*, 39 N. Y. 129, *Schell* v. *Plumb*, 55 N. Y. 592, *White* v. *Miller*, 71 N. Y. 118 (27 Am. Rep. 13), *Mitchell* v. *Read*, 84 N. Y. 556 and *Danolds* v. *State*, 89 N. Y. 36 (42 Am. Rep. 277), were cited as fully sustaining the ruling, as was also the case of *Masterton* v. *Mayor*, 7 Hill, 61 (42 Am. Dec. 38).

This is the modern English rule, whatever it may have been at an earlier time. *Simpson* v. *London, etc., R. W. Co.*, L. R. 1 Q. B. D. 274 (16 Moak Eng. Rep. 330); *McNeill* v. *Reid*, 9 Bingh. 68; *Fletcher* v. *Tayleur*, 17 C. B. 21. It is the Pennsylvania doctrine. *Hoy* v. *Gronoble*, 34 Pa. St. 9; *Garsed* v. *Turner*, 71 Pa. St. 56. The same rule has been approved and enforced by the Supreme Court of the United States. *United States* v. *Behan*, 110 U. S. 338.

Our own court has quite as strongly affirmed this doctrine as any other. In *Page* v. *Ford*, 12 Ind. 46, the case of *White* v. *Moseley*, *supra*, was approved. The doctrine is carried much further in *Fultz* v. *Wycoff*, 25 Ind. 321, than we are required to do here, and the decision in *Ingram* v. *Lawson*, *supra*, was expressly approved. *Fultz* v. *Wycoff*, *supra*, was approved in *Frenzel* v. *Miller*, 37 Ind. 1, and in *Niagara, etc., Ins. Co.* v. *Greene*, 77 Ind. 590. In the latter case the court said: "But the truth is, probable profits which might have been received, not remote or merely speculative, have often been allowed in proof, not as the measure of damages, but to aid the jury in estimating the damages."

Mr. Wood, in a note to his edition of Mayne on Damages, says: "Whatever may formerly have been the rule, there is now no question but that profits are recoverable as special damages, in case they are certain, and such as might naturally be expected to follow the breach. 'Gains prevented as well as losses sustained,' says ANDREWS, J., 'may be recovered for as profits, when they can be rendered reasonably certain by evidence, and have naturally resulted from the breach.'" Page 36.

A great number of cases are cited in support of this proposition, and they do sustain it.

The cases are harmonious in holding that the earnings of a lawyer or a physician may be proved. *City of Logansport* v. *Justice*, 74 Ind. 378 (39 Am. R. 79), and cases cited; *Town of Elkhart* v. *Ritter*, 66 Ind. 136. These cases all proceed upon the theory that, although it can not be certainly determined what would be the earnings in the future, the evidence is competent for the purpose of assisting the jury in measuring the damages. The principle underlying these cases is, as the reasoning of the courts shows, the same as that which prevails in cases where the profits can be ascertained with reasonable certainty.

It is not to be forgotten that the law does not require absolute certainty in any case. Even in crimes of the highest

grade demonstration is not required. In civil cases all that is deemed requisite is a fair and reasonable degree of probability. Lord Mansfield says "that the only degree of certainty attainable in judicial proceedings is a probable one," and this is the doctrine of logical as well as of law writers. It is, indeed, impossible to secure any higher degree of certainty in human affairs, although there may be degrees of probability. All that can be required in any case or upon any subject is that the evidence shall tend, with a fair degree of probability, to establish a basis for a relevant inference. It can not, therefore, be necessary that to entitle evidence to admission it must possess an absolute certainty; it is enough that it establishes a reasonable probability.

We think it clear that where there is an established business of a permanent character, as a mill for the manufacture of grain into meal, hominy or the like, the net earnings of the present and the past are competent to be considered by the jury in estimating damages. As said by BRYAN, J., in his opinion in *Stern* v. *Rosenheim*, 8 Cent. Rep. 881, "The value of an established business may be ascertained with reasonable certainty, although it may depend entirely upon the profits which accrue from its successful prosecution. In actions of tort the jury are always permitted to assess damages for injury or destruction of business. *Strasburger* v. *Barber*, 38 Md. 103."

If the loss consequent upon an interruption or destruction of business can not be considered by the jury, then the plaintiff can not be compensated. Either he must be allowed for this loss or he must be denied compensation; but he can not be denied compensation, and, therefore, the loss must be allowed him. The rule is elementary, lying, indeed, at the very foundation of the law of damages, that the plaintiff who has suffered a loss shall recover, at the very least, such a sum as will compensate him for the loss actually sustained. If a man whose business is earning him one hundred dollars per day is driven from that business, he certainly loses that much, and no in-

genuity of argument nor acuteness of speculation can make it appear otherwise when the question is brought into the full light of reason.

The appellees were certainly entitled to recover for the twelve days during which they actually ceased business. It was, therefore, competent to prove the average profits for the purpose of showing the actual loss during that period. But the appellees could not split up their cause of action; they must recover once for all. As Mr. Freeman says, "All the damages which can, by any possibility, result from a single tort, form an indivisible cause of action." Freeman Judgments, section 241. The cases upon this subject are collected in a very able article by Mr. Starr, and the soundness of the rule strongly maintained. 26 Am. Law Reg. 281; *City of North Vernon* v. *Voegler*, *supra*, and cases cited.

Under this general rule, the evidence was competent to be considered in determining the compensation the appellees should recover for the time that would actually be lost in making repairs rendered necessary by the overflow. Of course, recovery could only be had for such a length of time as would be required to repair injuries attributable solely to the effect of the overflow, and in making such repairs the appellees would be bound to proceed with all reasonable care, skill and diligence.

In holding the evidence competent to go to the jury to assist them in estimating damages, we by no means hold that the basis of the recovery is the profits that might be realized during the sixty days interruption of business. We are far from declaring such a doctrine, for all that we need decide upon the question of the admissibility of the evidence is, that it was proper for the jury to give it consideration in estimating the damages.

The instructions asked by the appellant upon the measure of damages assert that the appellees can in no event recover more than the rental value of the mill during the time of making the repairs. If we were right in our conclusions

upon the rulings on the admissibility of evidence, these instructions assert a doctrine radically wrong, and we need not again discuss the question.  If the property injured had been occupied as a dwelling-house, and had not been essential to the operation of an established business, the rule declared in the appellant's instructions would, doubtless, be the correct one.  *City of Indianapolis* v. *Huffer, supra; City of South Bend* v. *Paxon,* 67 Ind. 228.  But here the mill and its equipments were indispensable instrumentalities in the business of the appellees; without them their business ceased and they lost its value.  The fact that the appellees had an established business and that the mill was necessary to the continuance of the business exerts, we repeat, an important influence upon every phase of the case.

The third instruction given by the court is as follows: "If you should find from the preponderance of the evidence in this case that the plaintiffs' business as partners has been injured or interrupted by the defendant's wrong-doing, as complained of, this will form an element of damage which the plaintiffs will be entitled to recover; and with a view to awarding the plaintiffs adequate compensation upon this branch of the damages, you will have a right to take into consideration the nature and extent of the plaintiffs' business at the time of the injury, if any, its past productiveness and its reasonable profits accruing to the plaintiffs in the past—not for the purpose, however, of measuring the damages by expected or contingent profits of which the plaintiffs were deprived by such injuries, but to assist the jury, in the exercise of a sound judgment, to arrive at a just and adequate compensation for the actual injuries sustained."  It is true that this instruction is subject to verbal criticism, but it does not assert any erroneous legal proposition.

Appellant's counsel are mistaken in assuming that it directs the jury that profits are to be considered as an element of damages.  It asserts the very reverse of this, for its declaration is that profits are not to be considered for the purpose

of measuring the damages, but to aid the jury in arriving at a just conclusion as to the compensation for the actual injuries. The term "element" does not refer to profits, but to the injury and interruption of business. The clause in which the word "element" occurs very clearly shows that the court referred " to the injury and interruption of business," and this is consistent with the entire frame and scope of the instruction. Nor does the instruction direct the jury to allow future or contingent profits ; on the contrary, it in express terms restricts their inquiry to the past productiveness of the business, and to " its reasonable profits accruing to the plaintiffs in the past."

It may be that, had the appellant requested more specific instructions as to the time within which the mill must be repaired, and as to kindred matters, it would have been the duty of the trial court to give them ; but as the instruction given asserts no erroneous proposition, and so far as it goes is correct, there is no available error. *Colee* v. *State, supra*, and cases cited.

Instructions numbers one, two and three asked by the appellees, when considered, as they must be, in connection with all the other instructions, can not be regarded as erroneous. It is true that the basis of all actions like the present is negligence on the part of the municipal authorities; but where they collect and confine in one channel a body of water it is negligence not to use reasonable care to provide an outlet. This rule is founded on sound principle, and, as already shown, is thoroughly supported by authority. The corporation is not liable for fighting off surface-water, as a private citizen may do, but it has as little right as he has to confine it in a channel and conduct it in a body to another's premises without exercising due care to prepare means for its escape without injury.

The judgment is affirmed, at the cost of the appellant.

Filed Nov. 1, 1887 ; petition for a rehearing overruled Dec. 28, 1887.