(No. 6047. June 2, 1934.)

W. M. DeWINER; W. M. DeWINER and FAY DeWINER, as Executors of the Last Will of MARTHA DeWINER, Deceased, Respondents, v. OLOF NELSON and O. H. NELSON, Appellants.

[33 Pac. (2d) 356.]

Joseph T. Pence and J. J. McCue, for Appellants.

E. H. Hillman, for Respondents.

STEVENS, D. J.—This action was commenced in the district court of Fremont county by W. M. DeWiner and Martha DeWiner, his wife, against the defendants, Olof Nelson and O. H. Nelson.

After the trial of the cause in the district court the plaintiff, Martha DeWiner died, and thereafter upon motion of plaintiffs' counsel an order was made by this court substituting as plaintiffs W. M. DeWiner and Fay DeWiner as Executors of the Last Will of Martha DeWiner, Deceased.

In 1931 W. M. DeWiner and Martha DeWiner, his wife, operated what was kn wn as "The Last Chance Inn" in Fremont county, Idaho, at which place they had cabins for rent during the tourist season, and furnished meals and other accommodations to tourists.

The defendants, now appellants, were road contractors, and in 1931 had a contract to construct a portion of the Yellowstone Highway in the vicinity of "The Last Chance Inn."

Plaintiffs alleged in their complaint, as a first cause of action, that they entered into an oral agreement with the defendants, under and by the terms of which the plaintiffs agreed to reserve for the use of the defendants four cabins, and that in consideration thereof the defendants agreed to board from thirty-five to forty men daily with plaintiffs, beginning on or about June 21, 1931, and continuing until the road work was completed, or until

such time as climatic conditions made it impossible for the defendants to continue with their work; that defendants agreed to pay them the sum of $1.20 per day for each man furnished with meals under said contract; that defendants occupied the four cabins until on or about September 1, 1931, and until said time boarded their men with the plaintiffs, but thereafter failed and refused to occupy the cabins or to board their men with the plaintiffs, although the road construction work continued until November 10, 1931.

For the alleged breach of the contract to board their men with plaintiffs after September 1, 1931, the plaintiffs sought to recover damages from defendants on their first cause of action in the sum of $924 in the loss of profits that plaintiffs contend they would have made had the defendants complied with their contract.

Plaintiffs alleged for a second cause of action that the defendants leased from them four cabins for the term commencing on June 21, 1931, and continuing until defendants had completed their road work, or until weather conditions should render it impossible for them to continue with their work; that defendants occupied the cabins until about September 1, 1931, at which time they abandoned the same, and thereafter refused to pay rent therefor; that plaintiffs were unable to lease their cabins to others after September 1, 1931, and that by reason of defendants' violation of said agreement plaintiffs were damaged in the sum of $163.33.

The defendants answered, and a jury was called to try said cause and returned a verdict in favor of the plaintiffs in the sum of $227.50 on the first cause of action, and in the sum of $22.50 on the second cause of action. Judgment was entered on the verdict on March 13, 1933, and defendants have appealed from the judgment.

There are six specifications of error, all of which except the first, attack the sufficiency of the evidence to support the verdict. The first assignment of error was not urged by the appellants, and the others may be considered together.

Appellants contend that the judgment should be reversed for three reasons: (1) That there cannot be a recovery of damages in anticipated profits in this case for the reason that such profits are speculative, contingent and uncertain; (2) That the evidence offered by the plaintiffs in support of their claim for damages was incompetent; (3) That, in any event, the evidence is insufficient to support the verdict. These three propositions will be considered in the order in which they are set forth.

There is a distinction to be made in those cases where it is claimed that damages have been suffered in the loss of profits as a direct and immediate result of the violation of the principal contract, and those cases where damages are the result of dependent and collateral engagements, entered into on the faith and in expectation of the performance of the principal contract.

In the case of *Wakeman v. Wheeler & Wilson Mfg. Co.,* 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676, the court said:

" 'When the books speak of the profits anticipated from a good bargain as a matter too remote and uncertain to be taken into account in ascertaining the true measure of damages, they have reference to dependent and collateral engagements, entered into on the faith and in expectation of the performance of the principal contract. . . . . But profits or advantages which are the direct and immediate fruits of the contract entered into between the parties stand upon a different footing. . . . . It is difficult to comprehend why, in case one party has deprived the other of the gains or profits of the contract by refusing to perform it, this loss should not constitute a proper item in estimating the damages.' "

It was said in the case of *McConnell v. Corona City Water Co.,* 149 Cal. 60, 85 Pac. 929, 8 L. R. A., N. S., 1171:

" 'Where a party has contracted to perform labor from which a profit is to spring as a direct result of the work done at a contract price, and he is prevented from earning this profit by the wrongful act of another party, the loss

of profit is a direct and natural result which the law will presume to follow the breach of the contract. . . . . ' "

In the case of *Colorado Nat. Bank v. Ashcraft,* 83 Colo. 136, 263 Pac. 23, the court laid down the following rule:

" 'The courts have never denied compensation for profits lost merely because they were profits. They have refused to allow them where they were remote, imaginary, or impossible of ascertainment, but not where they were immediate, and there were *criteria* by which an estimate, approximately accurate, of their amount could be made.' "

The court further said in this case:

" 'Uncertainty as to the amount of damages is not an obstacle in the way of their allowance. Uncertainty as to the cause from which they proceed is what has occasioned trouble, and only when it cannot be ascertained with reasonable certainty that these have sprung from the breach alleged are they to be rejected as too remote, conjectural or speculative.' "

In the case of *Bokoshe Smokeless Coal Co. v. Bray,* 55 Okl. 446, 155 Pac. 226, the court stated the rule in the following language:

" 'The general rule is that the anticipated profits of a commercial business are too remote, speculative, and dependent upon changing circumstances to warrant a judgment for their loss. There is an exception to this rule that the loss of profits from the interruption of an established business may be recovered where the plaintiff makes it reasonably certain by competent proof what the amount of his actual loss was.' "

The damage caused to plaintiffs by the breach of the contract was the direct and immediate result of such breach, and cannot be denied to them on the ground that such damage is too remote, speculative or uncertain if the plaintiffs have, by competent evidence, proved the same with reasonable certainty.

Appellants' contention that the proof offered by the plaintiffs in support of their claim for damages was incompetent cannot be sustained.

Martha DeWiner, one of the plaintiffs, testified that during the time she boarded the men for appellants, she made a daily computation of the cost of the food supplied to the men; the cost of extra help required; generally as to what foods were used for their meals; and that taking these items into account, together with certain overhead charges, she made a profit of forty cents per day for feeding each man.

It clearly appears that this evidence was competent. (*City of Terre Haute v. Hudnut*, 112 Ind. 542, 13 N. E. 686; *DePalma v. Weinman*, 15 N. M. 68, 103 Pac. 782, 24 L. R. A., N. S., 423; *Macan v. Scandinavia Belting Co.*, 264 Pa. 384, 107 Atl. 750, 5 A. L. R. 1502.)

██ The remaining question to be considered as to the first cause of action is as to whether or not the evidence is sufficient to support the verdict.

Mrs. DeWiner testified as to the profits which she made during July and August from serving appellants' employees with meals, and in a general way as to what food was served, the amounts, and that food prices were practically the same in September and October, 1931, as in July and August, 1931.

██ It is true that it is impossible to determine from this testimony what the exact amount of plaintiffs' profits would have been had the appellants continued to board their men with them, but the fact that the damages in cases of this character cannot be ascertained with exactness is not a valid objection to their allowance. (*Colorado Nat. Bank v. Ashcraft, supra; City of Terre Haute v. Hudnut, supra.*)

In considering a similar question the supreme court of Indiana, in the case of *City of Terre Haute v. Hudnut, supra*, quoted as follows from the case of *Chapman v. Kirby*, 49 Ill. 211:

"The court there said: 'And of what does this loss consist but the profits that would have been made had the act not been performed by the appellants? And to measure such damages the jury must have some basis for an esti-

mate; and what more reasonable than to take the profits for a reasonable period next preceding the time when the injury was inflicted, leaving it for the other party to show that, by depression in trade or other causes, they would have been less. Nor can we expect that, in actions of this character, the precise extent of the damages can be shown by demonstration. But by this means they can be ascertained with a reasonable degree of certainty.' '' (*Macan v. Scandinavia Belting Co., supra; Colorado Nat. Bank v. Ashcraft, supra.*)

The evidence offered by the plaintiffs as to the amount of their profits for July and August, 1931, furnished a basis from which the jury could determine with reasonable accuracy what profits the plaintiffs would have made had the appellants continued to comply with the contract. This is all that is required in cases of this character, and we conclude that the evidence is sufficient to support the verdict as to the plaintiffs' first cause of action.

On the second cause of action the evidence shows without dispute that the appellants agreed to pay plaintiffs the sum of $70 per month as rental for four cabins, and the jury have found by their verdict that the appellants agreed to retain the cabins and pay rent therefor until the road work was completed, or until such time as appellants were not prevented from continuing such work by climatic conditions; the evidence shows that the appellants abandoned the cabins shortly after September 1, 1931, and thereafter refused to pay rent therefor, although they continued to work on the road until November 10, 1931, and that after the appellants ceased to occupy the cabins the plaintiffs were unable to lease the same to other persons.

The rule is well settled that where a lease has been repudiated by a tenant, and the premises abandoned, the landlord may take possession of the premises, relet them, and recover from the tenant any damages suffered thereby. Such damages will be the difference between the amount secured on the reletting and the amount provided for in

the original lease. (*Pacific States Corp. v. Rosenshine,* 113 Cal. App. 266, 298 Pac. 155.)

The plaintiffs took possession of the cabins after they were abandoned by the appellants, but were unable to relet them. In such circumstances the plaintiffs were entitled to recover from the appellants the rental contracted to be paid from the time the cabins were abandoned until appellants ceased their work on November 10, 1931.

The verdict of the jury as to the second cause of action is supported by sufficient evidence.

The judgment as a whole is therefore affirmed, with costs to the respondents.

Budge, C. J., and Givens, Morgan and Wernette, JJ., concur.