285 P.2d 1056

STATE of Idaho, for the use and benefit of MOSCOW CONCRETE, Inc., a corporation, Plaintiff,

and

Moscow Concrete, Inc., a corporation, Cross-Defendant, Respondent,

v.

AMERICAN SURETY COMPANY OF NEW YORK, a corporation, and Commercial Builders, Inc., a corporation, Defendants,

and

Commercial Builders, Inc., a corporation, Cross-Plaintiff, Appellants.

No. 8173.

Supreme Court of Idaho.

July 7, 1955.

Estes & Felton, Moscow, for respondent.

Robert W. Peterson, Moscow, Claude K. Irwin, Pullman, Wash., for appellants.

SMITH, Justice.

Respondent commenced this action in quantum meruit for the recovery of $2,022.96, alleged balance of the reasonable value of materials furnished during 1951 to appellant, which had contracted the construction of a public building, and its surety which had furnished the public works bond, and for attorneys fees and interest, as provided by I.C. § 45–502. The

trial court entered judgment in favor of respondent against appellant and its surety in the sum of $2,068.92, made up of $1,-559.32 balance of the reasonable value of materials furnished and $39.60 miscellaneous other purchases totaling a principal sum of $1,598.92, $220 interest thereon at 7% per annum to date of judgment, and $250 attorneys fees.

During April 1951, appellant contracted with the regents of the University of Idaho to furnish all materials and perform all work in the construction of Unit No. 2 of the Memorial Gymnasium, according to the plans and specifications thereof. Leo McCarty, president and general manager of respondent, desiring that his company furnish the concrete required in such construction, approached R. H. Sutherland, president of appellant, and quoted $14.65 a yard for the quality of concrete required. The parties discussed the conditions to be included in the contract, drafted an instrument of contract on appellant's letterhead, at its office, and thereupon executed it, as follows:

"R. H. (Bob) Sutherland     Herbert Dunham     C. K. Irvin

## "COMMERCIAL BUILDERS INC.

" 'Dependable Insured Service'

Telephone 2443     301 College Avenue     Box 303—Moscow, Idaho

"May 3rd, 1951
"RE: Unit No. 2 Memorial
Gym, U. of I.

"Commercial Builders, Inc.

Moscow, Idaho

Dear Sirs;

"We hereby quote you the sum of $14.65 Fourteen Dollars and Sixty Five cents per cubic yard of concrete for six sax mix on the basis of one thousand yards bought. All specifications to be met by us as designated by the Architect on the job.

"It is understood that we use our own trucks but if we default in delivery, we will permit you to haul the concrete from under our bunkers at a deduct of $1.50 per yard, which we will allow for your trucks hauling.

"It is understood that seven minutes per yard is allowed you to unload and take from the truck, this does not include time that it takes to properly mix on the job. Time starts from time of properly mixed mud O.K'd by Inspector. We will compensate to you for time we hold you up at our rate which is $7.00 per hour.

"It is understood that Forty cents be deducted from each yard of concrete as a discount for payment of concrete furnished from 1st to 10th of month, payable on 11th of each month, concrete delivered from 11th to 20th payable on 21st and concrete delivered from 21st to 30th payable on 1st of the month.

"We quote $1.22 per sax of cement in truck loads direct from cement companies. We quote $1.40 for sacked cement at our plant.

"Very truly yours,
Moscow Concrete Co., Inc.
By Leo F. McCarty

Accepted.
Commercial Builders Inc
By R. H. Sutherland"

Herbert Dunham, appellant's contractor of building and heavy construction of twenty years experience estimated the actual requirement of concrete for construction of the gymnasium unit at 910 yards with 10% added for safety.

Such construction actually required 848.08 yards of concrete, delivered under the terms of the contract. After the use of such amount of concrete appellant, during October, 1951, offered to take, and at the time of the trial was still ready and willing to accept, the additional yardage of concrete as called for in the contract at the contract price. In that connection however, Mr. McCarty, respondent's general manager, testified:

"Q. And did you ever offer to deliver the balance of the concrete? A. I don't understand what you are trying to get at. Did I offer to furnish the rest of the concrete for the same price?

"Q. Yes? A. No, I didn't."

Respondent billed appellant from time to time for concrete delivered during the course of the work and respondent promptly paid the billings substantially in accordance with the contract; respondent did not in any instance carry forward to the next billing any discount denied.

Due to an error in billing, respondent had allowed 5% discount, totaling $522, rather than the 40¢ per yard prompt payment discount. That error, when called to its attention by respondent, appellant promptly corrected by remitting to respondent its check of October 27, 1951, which included the $522; respondent had included that item in its billing through October 16, 1951. The understanding appears to have been that respondent, in exchange, would remit its check to appellant for the 40¢ per yard discount, set out in the contract, but since respondent failed so to remit, appellant deducted that discount, in the amount of $329.60, from the final accounting.

Respondent asserts, that since appellant did not use the 1,000 yards of concrete set out in the contract, but only 848.08 yards, in the construction of the gymnasium unit appellant is not entitled to the contract price of $14.65 a yard, but should pay for the 848.08 yards used on a quantum meruit basis, i. e., the retail price during 1951 of $16.60 per yard. Respondent admitted that it allowed a discount of 50¢ a yard on such retail price in usual course of trade, but made no allowance therefor in its final billing at retail price, whereas, the trial court made such deduction in its computation of figures set out in its findings.

After the Memorial Gymnasium unit was completed as to its requirement of 848.08 yards of cement furnished, respondent, December 5, 1951, rendered to appellant its bill of price adjustment at $16.60 a yard retail price, without discount, and thereafter its billing through December, 1951, for additional miscellaneous items. Appellant

adjusted the statement in accordance with the contract by deleting therefrom the item of so-called price adjustment and by taking the 40¢ per yard discount for prompt payment which adjusted the bill back to the contract price of $14.65 per yard for the concrete less the prompt payment discount, and then paid respondent the resulting balance. A summary of the foregoing follows:

Respondent rendered its statement against appellant:

```
June 1, – Nov. 20, 1951,
    848.08 yards concrete @ $16.60...................... $14,078.13
Billings previously made and paid,
    848.08 yards concrete @ $14.65......................  12,424.37
                                                          ──────────
Balance price adjustment.............................  $ 1,653.76
Miscellaneous items:
    Oct. 31 – Nov. 16, 1951............................      419.36
    Nov. 21 – Dec. 5, 1951.............................      139.80
    Dec. 22, 1951......................................       38.50
                                                          ──────────
Total ...............................................  $ 2,251.42
```

```
Appellant made deductions from
respondent's statement as billed:
    Refund of 40¢ per yard prompt
    payment discount per contract .................. $  329.60
    Respondent's price adjustment
    (back to the contract price) ..................   1,653.76    1,983.36
                                                                  ─────────
Appellant, Feb. 6, 1952, remitted
to respondent the balance of ............................. $    268.06
```

During trial the parties stipulated that the action involved the two items amounting to $1,983.36, as so deducted by appellant, and a miscellaneous item of $39.60, as set out in the complaint, totaling $2,022.96.

Respondent in its complaint refers to I.C. § 45–502 and alleges that no other claimant has filed a claim; alleges corporate existences, and the surety's business qualification in Idaho; alleges appellant's written contract for the construction of Unit No. 2 of the Memorial Gymnasium, and the surety's furnishing the contract bond and amount thereof as required by I.C. § 45–502; alleges appellant's contract with respondent of May 3, 1951 (copy is hereinbefore set out); then respondent alleges:

"The total yardage ordered or delivered under provisions of 'Exhibit B' [May 3, 1951 contract] hereto attached, failed to reach a total of 1,000

yards. The defendant, Commercial Builders, Inc., further failed to comply with the provision for payment dates, as provided in 'Exhibit B' hereto attached. The established and reasonable price for 'six sacks mix' concrete during 1951 was the sum of $16.60 per yard."

then alleges that between June 1, 1951 and February 1, 1952, it furnished appellant, for use in construction of the gymnasium unit, 848.08 yards of concrete at $16.60 a yard, and sets out appellant's payments thereon, leaving a claimed balance owing of $1,983.-36; also alleges a small account incurred during January, 1952, of $39.60, totaling $2,022.96, with interest; additionally, respondent claims reasonable attorneys fees.

Appellant and its surety filed general demurrers directed against respondent's complaint which the trial court overruled.

Appellant, in answer to the complaint, denied any breach of the contract and affirmatively alleged that if a breach had occurred, respondent's recovery is limited to loss of profits on the undelivered yardage of concrete of not to exceed $1 a yard. Appellant then cross-complained for certain detailed waiting time and the 40¢ per yard discount for prompt payment as provided by the contract, less a small balance owing on the concrete yardage used, totaling $372.68.

Respondent answered the cross-complaint and denied any alleged indebtedness owing to appellant; respondent then set out its waiting and overtime charged by it to appellant, in counterclaim of appellant's schedule of overtime charged respondent.

Trial was had before the court without a jury. The court adopted the quantum meruit theory advanced by respondent, and, with the exception of allowing the going discount of 50¢ on the 1951 retail price of $16.60 a yard for concrete, its findings and judgment against appellant upholds respondent.

Appellant by its several assignments specifies error of the trial court in finding in favor of respondent and against appellant and entering judgment accordingly.

The complaint sets forth *respondent's offer which, by appellant's acceptance, became the contract* between the parties. Respondent's quotation for the concrete per yard and the amount that appellant bought at such quoted price, reads:

"We [respondent] hereby *quote you* [appellant] the sum of $14.65 Fourteen Dollars and Sixty Five cents *per cubic yard* of concrete for six sax mix on the basis of *one thousand yards bought*." (Emphasis supplied.)

Respondent asserts that the entire 1,000 yards of concrete had to be delivered and used in the construction of Unit No. 2 of the Memorial Gymnasium, known as appellant's job No. 40. The contract is silent as to when, where, on what job, or otherwise, the concrete so bought by appellant was to be delivered or used. There appears a mere reference only to the gymnasium

unit at the top right hand side of the letterhead, which reference is not a part of the contract; but even though such reference were a part of the contract, it could not be construed to limit the quantity of respondent's concrete of *"one thousand yards bought,"* to any less quantity so bought, wherever delivered.

Further, the delivery provision in the contract negatives respondent's aforesaid assertion; that provision reads:

"* * * if we [respondent] default in delivery, we will permit you [appellant] to haul the concrete from under our bunkers at a deduct of $1.50 per yard, which we will allow for your trucks hauling."

Under such clause, if respondent's cost of delivering the concrete should exceed $1.50 a yard, as perhaps it could if appellant would desire delivery at a place some considerable distance from respondent's plant, then respondent reserved the right to deduct $1.50 from the quoted price of $14.65 a yard, and allow that sum but no more to appellant for his trucks hauling the concrete from under respondent's bunkers.

Further, while the contract does not set a time limit from and after May 3, 1951, for completion of delivery of the 1,000 yards of concrete bought by appellant, nevertheless the complaint shows that during the period from June 1, 1951, to November 20, 1951, appellant had performed very substantially under the contract, in that it had taken delivery of 848.08 yards and had paid for the same in full, and substantially at the times, according to the contract, i. e., $12,424.37 as the agreed price for the 848.08 yards at $14.65, less the discount of 40¢ a yard, amounting to $329.60 (mathematical computation shows $339.23 as correct amount of discount), resulting in $12,094.77 so paid by appellant, as set out in the complaint.

At most the complaint sets forth facts upon which might be grounded an action for damages on account of breach of the contract on the part of appellant; and any breach, if such there was, would not in anywise have bearing or be grounded upon appellant's past performance under the contract, simply because the complaint shows that respondent had delivered and appellant had fully paid for 848.08 yards of concrete of its total quantity of "one thousand yards bought." The contractual rights, duties and liabilities which still existed consisted of appellant's right to receive the balance of its concrete of "one thousand yards bought" from respondent, coupled with appellant's liability for payment of the purchase price thereof, and respondent's duty to deliver to appellant, at its bunkers or elsewhere as it may choose, the balance of the "one thousand yards bought" by appellant.

The only damage that respondent could possibly have suffered, by any breach of the contract, would have been occasioned

by appellant's refusal to comply any further with its contractual obligation of taking the balance of the concrete which it had contracted for at the contracted price, being 151.92 yards balance of the "one thousand yards bought" at $14.65 a yard. Respondent's recovery, if such could be had because of breach of the contract, would be for loss of the anticipated profits on the balance of appellant's purchased concrete at the contracted price per yard. De Winer v. Nelson, 54 Idaho 560, 33 P.2d 356; Boise Street Car Co. v. Van Avery, 61 Idaho 502, 103 P.2d 1107; Jensen v. Wooters, 56 Idaho 595, 57 P.2d 340.

■ Appellant contends that the record reveals a state of facts fatal to any right of recovery of respondent against appellant. Where a record on appeal discloses a matter which necessarily will prove fatal to a recovery as a final result, the appellate court will recognize and enforce it at the time it first appears. Alto v. Hartwood Lumber Co., 135 Wash. 368, 237 P. 987. We shall examine the record in the light of such rule.

■ First: The record discloses an utter failure of proof of any damage suffered by respondent on account of any actionable breach of the contract by appellant, or otherwise proximately caused by appellant.

■ Second: The record discloses a readiness and willingness at all times on the part of appellant to perform the balance of its duties and obligations under the contract, thereby to take delivery and pay for the balance of the concrete of "one thousand yards bought." The record therefore shows that no breach of the contract on appellant's part occurred.

■ Third: The record shows that respondent did not offer to deliver the balance of appellant's concrete by it bought at the contract price. Conversely, the record shows respondent's repudiation of the contract and its seeking to recover additionally on the concrete which it delivered and for which it received prompt payment; and that now it seeks to recover on a quantum meruit or on a retail price basis, but at any rate on a different basis than as contracted. The record therefore shows effort on the part of respondent to recover on the basis of its own dereliction rather than because of any dereliction on the part of appellant.

The record therefore shows that respondent is not entitled to a recovery on any theory.

The judgment of the trial court is reversed, with instructions to dismiss the action.

Costs to appellant.

TAYLOR, C. J., and KEETON, PORTER and ANDERSON, JJ., concur.