## FLETCHER *v.* KELLY, BY NEXT FRIEND.

[No. 5,574. Filed February 1, 1906.]

1. APPEAL AND ERROR.—*Elevators.*—*Negligence.*—*Weighing Evidence.*—Where there is some evidence that defendant was negligent in the maintenance of an elevator in which plaintiff was injured, the decision of the trial court will not be disturbed. p. 260.

2. SAME.—*Elevators.*—*Contributory Negligence.*—*Weighing Evidence.*—Where there is evidence from which the jury could find that plaintiff was not guilty of contributory negligence in stepping into an elevator shaft, thereby receiving injuries, a verdict for plaintiff will not be disturbed on appeal. *Cleveland, etc., R. Co.* v. *Berry*, 152 Ind. 607, held inapplicable. p. 260.

3. EVIDENCE.—*View of Premises by Jury.*—The jury have a right to treat their view of the premises, ordered by the judge, as evidence in the cause. p. 261.

4. APPEAL AND ERROR.—*Instructions.*—*Exceptions.*—*How Shown.*—Where an instruction in the record contained at its close the words: "Given and excepted to May 26, 1904, James M.

Leathers, judge," and it is not shown by the record or bill of exceptions otherwise that any exception was reserved, no question thereon is saved. *Indiana, etc., R. Co.* v. *Bundy*, 152 Ind. 590, followed. p. 262.

From Superior Court of Marion County (66,723); *James M. Leathers,* Judge.

Action by Mary J. Kelly, by her next friend, against Stoughton J. Fletcher. From a judgment on a verdict for $1,000, defendant appeals. *Affirmed.*

*Smith, Duncan, Hornbrook & Smith,* for appellant.

*Henry M. Dowling* and *Frederick W. Sheets,* for appellee.

WILEY, J.—Appellant owns a business block on the north side of Washington street, in the city of Indianapolis. The upper floors are rented to tenants for office purposes, and a passenger elevator is maintained and operated for their accommodation, and for the use of persons lawfully using the same. The elevator shaft extends from the basement to the top floor of the building. Appellee went into the building on a bright day, near 1 o'clock p. m., for the purpose of taking the elevator to go to one of the upper floors, and stepped into the elevator shaft, while the elevator was above the ground floor, and fell into the basement, by which she was injured. She brought this action to recover damages growing out of the accident, and succeeded in the court below.

Appellant's motion for a new trial was denied, and the overruling of that motion is the only error assigned. The negligence alleged is that it was customary when the elevator was above the ground floor to keep the door opening into the shaft closed, and when the elevator was at the ground floor to keep the door open; that the elevator shaft and the hallway leading thereto from the entrance of the building upon the ground floor were, on the occasion of the accident, and long prior thereto had been, dark and unlighted; that at that time appellant negligently permitted

the door to the elevator on the ground floor to remain open while the elevator was being run and operated above the ground floor; that about 1 o'clock on the 9th day of July, 1903, while said door on the ground floor was open, and the elevator was above, appellee carefully entered the building on the ground floor, for the purpose of visiting a person in the employ of a tenant of appellant upon one of the upper floors; that she carefully approached the elevator for the purpose of taking passage, and saw the elevator door was open, but, by reason of the darkness of the hallway, entrance and shaft, and for the further reason that coming from the intense light of Washington street her sight was confused and partly blinded, she was unable to look beyond and see whether the elevator was in position beyond the door; that she was ignorant of the fact that the elevator was not present, and that such shaft was open and exposed; that, proceeding with due care and caution, she stepped through said door, and fell to the bottom of the shaft, to her injury, etc.

Appellant moved for a new trial upon three grounds: (1) That the verdict was not sustained by sufficient evidence; (2) that the verdict was contrary to law; and (3) that the court erred in giving three instructions.

In the able brief of counsel it is said: "The entire argument in the case is based upon the situation produced by the evidence in this cause. The argument is addressed to two propositions: (1) The verdict is not sustained by the evidence, but, upon the contrary, is in direct and positive conflict therewith. (2) That the evidence was such as that it was error to give the thirteenth instruction given by the court on its own motion." By this statement it is made plain that the decision is confined within very narrow limits. It is substantially conceded by counsel for appellant that there is direct and positive evidence supportive of every material fact necessary to establish appellee's case, as made by her complaint, but that there are facts

disclosed by the record which ought to outweigh such evidence, and for that reason a reversal should be ordered. In view of the earnest and well-timed argument addressed to this branch of the case, we deem it important to give a résumé of the evidence bearing upon it. That evidence is directed to two important facts: (1) Whether the door to the elevator shaft was open when appellee approached it, or whether she opened it. (2) Whether the light in the hallway was such as would enable her to see, if she had given any heed to it, that the elevator was not present, even though the door was standing open when she came to it.

Appellee testified that when she came into the building the boy who ran the elevator was sitting in front of the south wall of the elevator, as he always did when he had no calls; that the door was open about two feet; that as she came up to the door she had two packages and her pocketbook in her right hand, and that as she passed through she put her left hand up, pushed the door back a little, and stepped into the shaft. She also testified on cross-examination that she did not put her fingers between the bars of the door and open the lock and throw the door back against the north wall. She further stated that when she stepped into the elevator shaft the door was open far enough for her to pass through without her throwing it back, and she did not know why she did it. Upon the question of light, appellee testified that the elevator shaft was so dark that she could not see that the elevator was not there.

Doctor Westover, who was immediately called to attend appellee, testified that the hallway was dark, and specially appeared so to one coming in from Washington street; that neither the elevator shaft nor the elevator cage was artificially lighted, and that the inside walls of the shaft were dingy and dirty and black with dust; that the direct rays of the sun did not shine into the hallway; that the light in the hallway would be reflected from the pavement out-

side; that "it is a dingy little bit of a hallway there, with no light from the sun."

There seems to be no substantial conflict in the evidence as to the physical conditions surrounding the hallway, shaft and elevator. The boy who ran the elevator, and who was sitting by the shaft when appellee entered the building, testified that the door was closed, and that she "rushed in there and opened the door and threw it back;" that he jumped up and tried to warn her that the elevator was not there, but that she was too fast, and that he could not get there in time. He said he did not see her put her hand in and open the latch; that the latch made a clicking sound, and that his statement that she opened the door was based upon his "hearing the click." The person who was in temporary charge of the elevator testified that when he started up with the elevator he closed the door "by pushing it shut." Soon after the accident, and while appellee was in a high state of excitement and nervousness, and was hysterical, she made admissions to several persons, who were witnesses at the trial, that when she entered the building and approached the elevator shaft the door leading thereto was closed; that she opened it and just stepped in.

It is disclosed by the evidence that appellee had been in the building a short time before the accident, and had gone down in the elevator. One witness, in detailing what appellee said about it, testified as follows: "I asked her how it happened. She said that John was running the elevator when she went down, and that when she came back he was sitting on a chair outside, and she supposed he was still running the elevator—that another boy was running it, though—and she thought she would hurry and get in and surprise him and be in there when he got in—before he got there, rather; and she said she just reached in and opened the door, and did not look to see whether the elevator was there or not, and stepped off." This was soon after she was hurt. To other witnesses, while she was still in a state of

excitement, etc., she stated that her injury was occasioned by her own fault. As against her admissions that she opened the door, and in support of her statement that it was open when she approached it, appellant testified that when the door was closed and the elevator up, the door could not be opened.

Appellee knew that the elevator boy was usually sitting in front of the south wall of the elevator shaft when the elevator was open at the ground floor ready to receive passengers. She knew that this boy—John Kelly—ran the elevator all day except from 12 to 1 o'clock, when the janitor ran it. She testified that on the day of the accident, a litle while before 1 o'clock, she was taken up and brought down in the elevator by the janitor, and that John Kelly was not there. Kelly, however, contradicted this statement by saying that about 11:55 o'clock he took appellee up; that she stayed upstairs about four minutes; that he then brought her down, and turned the elevator over to the janitor.

It is further disclosed by the evidence that the day was clear and the sun was shining bright. The physical conditions and surroundings are succinctly and correctly described in appellant's brief as follows: "The building faces south. The south wall of the building is two feet eight and one-quarter inches thick. The doorway through this wall is four feet eight inches in width. Immediately after passing through the wall the hallway widens eight inches on each side, so that the hallway is six feet wide. From the inside of the doorway to the elevator shaft the distance is five feet two and one-quarter inches. The elevator shaft projects from the east side of the hall into the hallway two feet and nine inches, and it is three feet and four inches from the west side of the elevator shaft to the west side of the hallway."

Upon these facts we are asked to reverse the judgment, for the reason that the verdict is not sustained by sufficient

evidence. Upon the issue of negligence on the part 1. of appellant, as tendered by the complaint and the answer in denial, the burden was upon appellee to establish it. There was direct and positive evidence in support of that issue. Upon that evidence that issue was submitted to the jury, and by their general verdict it was determined adversely to appellant. There is positive and direct evidence in the record upon which the verdict and judgment may securely rest.

As to the issue of appellee's negligence, or her freedom from fault contributing to her injury, the burden was upon appellant, and under the evidence it was a question 2. of fact to be determined by the jury upon proper instructions. The jury resolved that question in her favor, both by the general verdict and answers to interrogatories.

In their brief counsel for appellant "admit that there does seem to be evidence supporting the plaintiff's case at every material point necessary to her recovery; for it is very true she says that the hall was dark, and that she could not see whether the elevator was present or not, and that the door was open." This is an admission that under the evidence the jury was justified in finding that appellant was guilty of negligence as charged, and that appellee was free from fault. As to the admissions made by appellee as to how she was injured, and that she opened the door and just stepped into the elevator shaft, they are met by her flat denial that she ever made such statements to the several witnesses who testified concerning them. The evidence of those witnesses and her denial presented to the jury a material question of fact, and they determined that question in her favor.

Upon the question of fact as to whether the hall was dark and appellee could not see, in view of the fact that she testified positively and directly that it was dark and she could not see whether the elevator was present in front

of the open door, counsel urge that her positive evidence is overthrown and contradicted by the laws of physics as to the dispersion of light. In this connection counsel base their contention upon the following proposition: "If the recognized laws of nature contradict the testimony of witnesses, the latter will not be considered, and such testimony will not prevent the Appellate Court from holding that a verdict based thereon has no evidence to sustain it." They cite the case of *Cleveland, etc., R. Co.* v. *Berry* (1899), 152 Ind. 607, 46 L. R. A. 33, to support the proposition. As applied to the facts here, the question decided in that case is not applicable.

Appellee is supported in her statements in regard to existing physical conditions surrounding the scene of her injury, as to the hall and elevator shaft's being dark, by the evidence of Dr. Westover. The elevator was entered from the west. The east wall of the shaft was brick. The jury found by their answers to the interrogatories that on the occasion of the accident a person standing in front of the open door of the elevator shaft could not, by giving attention, have readily seen through the opening into the elevator shaft and across the shaft, and seen the east wall thereof. Also, that if she had been looking for that purpose she could not readily have seen that the elevator was not there. The jury also found specifically that the door was open when she approached it. Under the direction of the court, and in charge of a bailiff, the jury viewed 3. the premises. They not only heard the evidence as to the disputed facts, but had an ocular view of the surroundings of the scene of the accident, and from what they saw, which they had a right to consider, and from the facts which they believed were established by the evidence, they resolved every issuable fact in favor of appellee and against appellant. This being true, we can not disturb the judgment upon the evidence without constituting ourselves triers of questions of disputed facts, and

this we can not do. *Morgan* v. *Jackson* (1904), 32 Ind. App. 169; *Roberts* v. *Koss* (1904), 32 Ind. App. 510.

But one other question is discussed, and that is the alleged error of the trial court in giving instruction thirteen on its own motion. Conceding, without deciding, that all the instructions are in the record, appellant is not entitled to have the thirteenth instruction considered, because it does not appear from the record that he reserved any exception to the giving of it. At the conclusion of this instruction are these words: "Given and excepted to May 26, 1904, James M. Leathers, judge." In *Indiana, etc., R. Co.* v. *Bundy* (1899), 152 Ind. 590, it was held that where an exception to an instruction given by the court on its own motion by an indorsement on the margin thereof, "Given and excepted to," and signed by the judge, does not properly present any question, where it is not shown by the bill of exceptions that either party took or reserved exceptions to such instruction. No such a showing is made here, and nowhere in the record does it appear that either party took or reserved an exception. Under the authority cited, we can not consider the instruction.

This disposes of every question relied upon and discussed; and, finding no error, the judgment is affirmed.