## MADDOX *v.* YOCUM.

[No. 17152.   Filed January 27, 1944.]

*Barnes, Hickam, Pantzer & Boyd, Charles M. Wells,* all of Indianapolis, and *Guy W. Dausman,* Goshen, for appellant.

*McKesson & Kizer,* Plymouth, for appellee.

FLANAGAN, J.—This is the second appeal of this case. See *Maddox* v. *Yocum* (1941), 109 Ind. App. 416, 31 N. E. (2d) 652. The opinion in the first appeal relates the issues and disposes of alleged error in the overruling of appellant's demurrer to the complaint. The cause was remanded for a new trial which was held and resulted in a verdict for appellee in the sum of $4650.

There is evidence from which the jury could have found the following facts:

In 1933 appellee, Lawrence Yocum, was a distributing agent for the Lincoln Oil Company, and as such agent sold gasoline and oil from a truck to farmers in Marshall County, Indiana. One of his customers was Edward Heyde who owned a farm located at the southeast corner of the intersection of U. S. Highways No. 6 and No. 31. Heyde desired to build a gasoline filling station at the intersection corner but did not want to operate it himself. He therefore agreed orally with appellee that appellee should lease the station for a period of five years and pay as rental one cent per gallon of gasoline sold there. Appellee prepared the plans for the filling station building. Heyde furnished the money for its erection and appellee performed part of the

work. Heyde and the Lincoln Oil Company signed a written agreement to the effect that Lincoln products should be sold at the station for five years, and that the Lincoln Oil Company should install certain gasoline pumps and have the right to remove them when the station ceased to sell its products. When the station was ready for business appellee arranged with appellant to operate it for him and agreed that appellant should receive two cents per gallon on all gasoline sold and twenty cents on all oil sold. Appellant proceeded to operate the station under such arrangement and appellee paid the rental of one cent per gallon to Heyde from June 15, 1933, to October 1, 1934, at which time Heyde sold the station property to appellant and notified appellee to pay the rent thereafter to appellant. After October 1, 1934, appellant continued operating the station under his arrangement with appellee and appellee paid him one cent per gallon rental in addition to the two cents per gallon he was to receive for running the station. This continued to the middle of November, 1934, at which time appellant refused to receive any more products from appellee or the Lincoln Oil Company, refused to deliver possession of the station to appellee, and proceeded to operate the business as his own. Appellant has been in exclusive possession of the station since.

Appellant contends that the agreement between Heyde and the Lincoln Oil Company provided for sale of gasoline and oil to Heyde; that it was inconsistent with any oral lease from Heyde to appellee, and that since appellee assisted in procuring the contract he was bound by it and it superseded any oral lease which he may have had.

The contract between Heyde and the Lincoln Oil Company was prepared by taking a form of contract

used by the Lincoln Oil Company, and known as a "Reseller's Contract," and striking provisions therefrom and adding provisions thereto. The result was inconsistency and confusion. As finally executed it provides that the Lincoln Oil Company shall be the sole source of supply for petroleum products sold through Heyde's station; that Heyde shall pay all taxes and assessments; that the Lincoln Oil Company shall deliver its products and that Heyde shall purchase, receive and pay for the same at the prevailing prices; that the Lincoln Oil Company shall furnish the pump equipment and have a right to remove it upon termination of the contract; and that in consideration of the premises being used for storing and distributing its products, the Lincoln Company shall pay Heyde one cent per gallon on all gasoline sold there. On the margin of the contract is the following provision:

"It is further understood and agreed between the parties hereto that L. Yocum is furnishing and delivering to first party the petroleum products called for under this contract and the said Yocum is to pay first party the discount and rent as provided herein. Second party shall not be liable for any discount or rent under the contract during the time that the said L. Yocum is furnishing and delivering the petroleum products to said first party."

The meaning of this contract can only be discovered by examining its background. The evidence establishes the fact that the only purpose the parties desired to accomplish was on the part of Heyde to get the Lincoln Company to furnish and install the pumps, and on the part of the Lincoln Company to make certain its right to remove its pumps when its products were no longer sold at the station. Heyde testified that when the contract was prepared he read it and protested that it provided that he was going to sell and distribute petroleum

products at the station and that he did not intend to do any such thing. The representatives of the Lincoln Company told him that they were not going to make him sell gas; that they wanted to be sure they could take out their equipment when Lincoln products were not sold there any more; and that this was the only contract form they had. He then signed the contract, but told them he was not going to run the station. He did not run it. Thereafter, until he sold the property, he received monthly the rental from appellee which appellee had agreed to pay under the oral lease. When he sold the station to appellant, Heyde gave appellee a written notice to thereafter pay the rent to appellant and appellant did receive the rent from appellee for a period of six weeks thereafter. When the contract between Heyde and the Lincoln Oil Company is read against the background of these surrounding circumstances it seems clear that it does not in any way conflict with or supersede the oral lease between Heyde and appellee.

Appellant next says that the evidence does not show sufficient performance on the part of appellee to remove his oral lease from the operation of the statute of frauds. We cannot agree with appellant's contention. The possession of appellant under his contract with appellee was the possession of appellee and this possession continued for over a year. During all that time appellee paid the agreed rental. He also planned the station and helped build it. We think the evidence is ample to show sufficient performance on the part of appellee to remove the oral lease from the operation of the statute of frauds. See *Sourbier* v. *Claman* (1936), 101 Ind. App. 679, 200 N. E. 721; *Nash* v. *Berkmeir* (1882), 83 Ind. 536; *Railsback* v. *Walke* (1882), 81 Ind. 409.

Appellant next contends that appellee, by his answer to certain questions propounded to him on conditional examination before trial, made a judicial admission that the only lease he claimed to have was the contract between Heyde and the Lincoln Oil Company hereinabove referred to. We need not consider the question as to whether an answer to a question propounded in a conditional examination can constitute judicial admission for we are forced to conclude that the answers referred to do not amount to an admission of any kind.

The conditional examination discloses that appellee testified to the facts showing his oral arrangement with Heyde to lease the station, the planning and building of the station, his arrangement with appellant to operate it, its operation, etc., as we have heretofore set forth the facts in this opinion. Appellant's attorney then by a series of questions sought to have appellee give his legal opinion as to whether his rights flowed from his oral arrangement with Heyde or from the written agreement between Heyde and the Lincoln Oil Company. The only thing disclosed by the answers was that appellee is a layman and is confused over legal causes and effects. His legal opinion concerning the subject of the inquiry is of no value whatsoever and could not result in giving to the facts an effect exactly opposite that given them by application of the rules of law.

Appellant complains of the admission and exclusion of certain items of evidence. However, a careful examination of these items and the entire record discloses that they are of such a nature that the items admitted over objection could not possibly have been harmful to appellant, and those excluded could not have been helpful to him had they been admitted.

Appellant's final contention concerns the matter of damages. He says that the only evidence of damage is the testimony of appellee that his average monthly net profit from the operation of the station while he was in possession was $93 per month; that this evidence was insufficient to show his actual net profit because appellee made no allowance for his own services; that in any event appellee was not entitled to recover lost profits during the balance of the term of the lease because such future profits were speculative, remote and contingent on extraneous factors; and that appellee had the duty to mitigate damages by seeking another location, which duty he did not discharge.

The rule is well established that future profits, speculative and contingent in their nature, are not to be considered in estimating damages. It is also the rule that the proper measure of damages because of deprivation of the use of property is the value of such use. 25 C. J. S., p. 514; 15 Am. Jur., p. 537. This is ordinarily measured by the property's fair rental value. *New York Central R. Co.* v. *Reidenbach* (1919), 71 Ind. App. 390, 125 N. E. 55. However, the law does not exclude profits in determining the value of the loss of the use of property merely because they are profits. They are generally excluded because by their very nature they are usually impossible of ascertainment to any reasonable degree of certainty. But where the reason for the rule of exclusion ceases to exist, the rule does not apply. So, where the loss of the use of property involves a known and established business, the value of such loss of the use of the property may be determined from the loss of profit if such profits can be shown with a reasonable degree of certainty. 15 Am. Jur., pages 556 *et seq.* and 572 *et seq.;* 25 C. J. S., p. 516 *et seq.; City of Terre Haute*

v. *Hudnut* (1887), 112 Ind. 542, 13 N. E. 686; *Cleveland, etc., R. Co.* v. *Woodbury Glass Co.* (1923), 80 Ind. App. 298, 120 N. E. 426.

In the instant case the value of the loss of the use of the involved property would have to be determined from loss of profits or by ascertaining the fair rental value of the property on the market and deducting therefrom the amount of rent which appellee was required to pay under his lease. The property here was a filling station located on the corner of a farm. It was of value as such a business site only because of being at the intersection of two busy United States highways. Its rental value depended entirely upon the business it could attract as a filling station. The rent paid under the lease was a percentage of the business done. The gross profit of appellee was a percentage of the business done. From the gross profit was deducted only the cost of delivering the gasoline and oil in order to arrive at the net profit. This cost of delivery remained in almost constant proportion to the volume of business done. Under these circumstances the profit could be ascertained with as reasonable accuracy as could the loss measured by ascertaining the rental under the lease and the fair rental value of the property on the market and deducting the one from the other. It is true that the loss of use was for a period of more than three and one-half years. But these years had passed when this case was tried. During the time involved the appellant was in possession of the property and in the same business in which appellee had been engaged. Any pertinent change in conditions were within his knowledge and he could have informed the jury concerning them. The situation seems to be one in which it is quite proper to consider

the loss of profits in determining the value of the loss of use of the property.

Appellant says that appellee should have deducted some allowance for his own services in arriving at his net profit. That, it seems to us, was a question for the jury to determine. If they concluded that a deduction should have been made, they were in a position to make it.

We cannot agree with appellant's contention that appellee could and should have found a new location and thereby reduced his damage. This is not a case where an established mercantile business could be moved to a new location and continue with limited loss. Appellee's business was dependent upon the peculiar location of this particular filling station.

We find no reversible error in the record.

Judgment affirmed.

NOTE—Reported in 52 N. E. (2d) 636.