LAMKINS *v.* INTERNATIONAL HARVESTER COMPANY.

4-7382                                    182 S. W. 2d 203

Opinion delivered July 10, 1944.

638

*Ras Priest,* for appellant.

*Kaneaster Hodges* and *Pickens & Pickens,* for appellee.

KNOX, J. The question presented by this appeal is whether in view of the special facts and circumstances connected with the sale of a tractor, the seller thereof could be held liable for special damages resulting from the loss of crops, occasioned by inability to cultivate the same because the tractor could not be used at night, the seller having failed to furnish starter and lighting equipment for the tractor within the time contemplated by contract.

On or about December 4, 1941, appellant verbally contracted with appellee, Gay Lacy, dealer for Interna-

tional Tractors, for the purchase of one H. tractor, one H. M. 221 cultivator, two cylinders, and one 9 A. disc harrow, for a total price of $1,485. The parties agreed that buyer would deliver and seller accept a pair of horses and an old tractor for a credit for $642, and that the balance of the purchase price, $843, together with a finance charge of $53.71, a total of $896.71, should be represented by a title retaining note, payable in three installments as follows: 10/1/42—$404.84, 4/1/43—$162.72; and 10/1/43—$329.15.

Because of the limited number of tractors available, it was agreed that delivery of the new equipment might be postponed until about March 1, 1942, and as a matter of fact delivery was actually delayed until after May 1, 1942. In the meantime appellant had surrendered to dealer the horses and old tractor.

The new equipment was finally delivered to appellant's home at a time when he was absent therefrom, but a few days thereafter the dealer returned and requested appellant to execute the note and the sales contract. Appellant testified that he at first refused to execute the papers, because the tractor was not equipped with lights and starter, but upon the express promise by dealer that such equipment would be supplied within three weeks he finally did sign the papers. On account of governmental priority regulations this equipment was not supplied within the three weeks period. In November, 1942, the dealer obtained this equipment, and requested that appellant bring the tractor to his shop so that it might be installed. Fearing that the tractor would be held for past due installment on note, appellant refused to deliver it to dealer, but insisted that equipment be installed at his home, and while tractor was in his possession. This equipment was actually installed on the tractor after this action was begun.

When the equipment, without starter and lighting equipment, was delivered in May of 1942, appellant did sign the note, and, also, a document designated "Order for Farm Equipment." These instruments were introduced in evidence at the trial. No words appear in these

written instruments indicating that any part of the equipment had not been delivered, nor that the dealer was charged with notice that the tractor was to be used in cultivating a crop at night, nor that the parties were contracting with respect to special damage which might accrue to appellant by reason of loss of crops resulting from his inability to use tractor at night for want of lights thereon. The note and contract each lists one article of equipment included in the sale and price thereof as follows: "Two cylinders $20." Appellee Lacy, the dealer, in his brief says that this item "constituted the lighting equipment for this tractor."

The note was indorsed and negotiated to appellee, International Harvester Company, on June 4, 1942, which company began this action in replevin on January 16, 1943. Appellant filed answer and also filed cross-complaint against Lacy, the dealer, and the International Harvester Company. His cross-action was based upon the failure to deliver the starter and lighting equipment, and the resultant loss occasioned by inability to use the tractor at night. At the time the original cross-complaint was filed, the equipment had not been placed on the tractor. He alleged: "That by reason of the failure of the cross-defendant, Gay Lacy, and the International Harvester Company, to equip said tractor with lights and a starter as he agreed to do, the defendant was denied the use of said tractor at nights over a period of forty-five days; and by reason of such deprivation, the defendant was unable to plant, cultivate and harvest a part of his crop, namely, twenty-five acres of land which he could and would have planted and cultivated in soy beans if he had had the lights and starter on said tractor, and by reason of such loss, the defendant has been damaged in the sum of $10 per night, for each and every night he was unable to use said tractor, or a total sum of $450, which amount he is entitled to set off against the indebtedness of $896.71 mentioned in the note sued on."

The prayer was for said sum of $450, and the "additional sum of $100, the value of the lights and starter which were not delivered."

The starter and lighting equipment was later delivered and thereafter appellant, in an amendment to his cross-complaint, stated: "Defendant further says that the starter and lights in question were in fact delivered about April 1, 1943, and installed, and, while they were second-hand, or appeared to be so, and have never been satisfactory, they have been retained by the defendant, and the demand for their value is therefore waived." His amended prayer is for $450 by way of special damages as a set-off against the note sued on . . . or . . . judgment . . . against Lacy for said sum."

Other facts reflected by the record, which relate directly to the question of special damages will be stated in the course of the opinion.

Both here and in the court below, appellant limited his defense solely to his right to recover special damages. The trial court held that the facts presented by the record were not sufficient to justify submission of the question to the jury and directed a verdict against appellant.

Ordinarily when a seller fails to deliver goods within the time agreed upon the buyer is entitled to recover as damages the difference between the contract price and the market price at the time of the breach. Under some circumstances, however, a buyer may recover special or consequential damages resulting from failure to deliver, or delay in delivery. The rules applicable in such cases are fully discussed in the case of *Hooks Smelting Co.* v. *Planters Compress Co.,* 72 Ark. 275, 79 S. W. 1052, which case has been consistently cited and adhered to. *Long* v. *Chas. T. Abeles Co.,* 77 Ark. 150, 91 S. W. 29; *Pine Bluff Iron Works* v. *Boling & Bro.,* 75 Ark. 469, 88 S. W. 306; *Sager* v. *Jung & Sons Co.,* 143 Ark. 506, 220 S. W. 801; *Southwestern Bell Tel. Co.* v. *Carter,* 181 Ark. 209, 25 S. W. 2d 448; *Interstate Grocery Co.* v. *Namour,* 201 Ark. 1095, 148 S. W. 2d 175.

In *Hooks Smelting Co.* v. *Planters Compress Co., supra,* Mr. Justice RIDDICK points out that the rule of law relating to special or consequential damages was

first announced in the English case of *Hadley* v. *Baxendale,* 9 Exch. 341.

After reviewing and criticising the interpretation given to the English case by certain textwriters, the learned justice declared what this court had determined was the correct rules of law for the assessment of special damages. A complete restatement of these rules, as set forth in that opinion, is unnecessary. For the purpose of this opinion it is necessary to point out only that in order to render a seller liable to the buyer for special or consequential damages arising from delay in delivering the article of sale, it is necessary that at or before the time of the making of the contract of sale he knew of the special circumstances which would expose the buyer to special damages by reason of the delay in delivery, and that such seller at least tacitly consented to assume the particular risks arising from such delay. The seller cannot be charged with special damages, where his knowledge respecting the special circumstances which would cause such special damage is acquired after the purchase price of the article of sale is fixed. But notice of such circumstances is not alone sufficient to make the seller liable, for as was said in *Hooks, etc.,* v. *Planters, etc., supra*: ''where the damages arise from special circumstances, and are so large as to be out of proportion to the consideration agreed to be paid for the services to be rendered under the contract, it raises a doubt at once as to whether the party would have assented to such liability had it been called to his attention at the making of the contract unless the consideration to be paid was also raised so as to correspond in some respect to the liability assumed. To make him liable for the special damages in such a case, there must not only be knowledge of the special circumstances, but such knowledge 'must be brought home to the party sought to be charged under such circumstances that he must know that the person he contracts with reasonably believes that he accepts the contract with the special condition attached to it.' In other words, where there is no express contract to pay such special damages, the facts and circumstances in proof must be such as to make it reasonable for the

judge or jury trying the case to believe that the party at the time of the contract tacitly consented to be bound to more than ordinary damages in case of default on his part.''

Evidence relating to notice and, also, relating to circumstances indicating an implied agreement by seller to be liable for special damages is meager, vague and indefinite. Responding to a general question from his counsel, appellant testified in detail as to the original sales agreement made on December 4, but failed to recount that in such agreement there was any mention of the starter or lighting equipment, the necessity therefor, or special understanding with respect thereto. Referring to the conversation had between himself and Lacy relative to these items after the tractor was delivered, he testified as follows: ''I says 'Mr. Lacy I can't use this tractor. . . . I don't want it without a starter or lights.' And I told him that when we traded.'' ''I had been operated on and didn't want the tractor that had no starter.'' Asked what reason he had given to the dealer as to why he ''wanted the lights,'' appellant replied ''so that I could operate it at night, I had nearly 200 acres of land to work.'' To the leading question— ''Did you tell Mr. Lacy that you required the starter and lights and the reason why at the time you made the original trade with him?'', appellant answered—''Yes, sir.''

The above quotations reflect the entire evidence contained in the record relative to special damages. Conceding that such evidence is sufficient to show that appellant communicated notice to the dealer on or before December 4, 1941, that he desired lighting equipment so that he might work at night, there is nothing in the testimony showing circumstances surrounding and connected with the transaction which were calculated to bring home to the dealer knowledge that appellant expected him to assume liability for a crop loss, which might amount to several hundreds of dollars, if he should fail to deliver a $20 lighting accessory. There was, of course, no such express contract on the dealer's part,

and the facts and circumstances are not such as to make it reasonable for the trier of facts to believe that the dealer at the time tacitly consented to be bound for more than ordinary damages in case of default on his part.

Furthermore, appellant's claim for damages, asserted in his cross-complaint, is based upon allegations that he was prevented from planting and growing a twenty-five-acre crop of soybeans. The measure of damages for preventing planting of a crop is the rental value of the land. *Dilday* v. *David,* 178 Ark. 898, 12 S. W. 2d 899; *St. L., I. M. & S. Ry. Co.* v. *Saunders,* 85 Ark. 111, 107 S. W. 194. Proof of the rental value of thi~ twenty-five acres is absent from the record.

We are convinced that the trial court did not err in dismissing appellant's cross-complaint and directing a verdict against him for the full amount of the note and interest. The judgment is affirmed.