THE WESTERN INDIANA GRAVEL COMPANY *v.* OPP.

[No. 18,121. Filed June 8, 1951. Rehearing denied October 5, 1951. Transfer denied December 5, 1951.]

674

*Harry P. Schultz,* of Lafayette, for appellant.

*Ferguson & Keating,* of Lafayette, for appellee.

ACHOR, J.—This was an action instituted by appellee against the appellant who owned a tract of land in Tippecanoe County, Indiana, upon which the latter engaged in the business of mining gravel. Appellee alleged that through appellant's mining operations it collected water on its real estate which seeped into and upon the adjacent land of the appellee by reason of which she suffered damages to her land and growing crops. There was evidence that among other things during the summer of 1947 one tract of 15 acres of appellee's land

could not be planted because of the water. The jury returned a verdict of $6,500.00.

One of the grounds assigned as error in appellant's motion for new trial and relied upon in this appeal was the court's refusal to give appellant's tendered instruction 3. This instruction pertained to the measure of damages recoverable by appellee because of her deprivation of the use of said 15 acres of land. Because of the conclusion reached by this court a consideration of other errors assigned is not necessary. Appellant's tendered instruction 3 was as follows:

"The court instructs you that if you find from all the evidence that the plaintiff was unable to farm a portion of her real estate for the year 1947, and if you further find that the defendant The Western Indiana Gravel Company, is liable for such failure, the measure of plaintiff's damage is the fair rental value of the land not farmed."

Appellee agrees that as a general rule the measure of damage is the fair rental value of land not farmed, as stated in the instruction. However, appellee contends first: That there was no error in the court's refusal to give the instruction because the land in controversy was leased on a sharecrop or profit sharing rental and not a cash rental and, therefore, that the "rental value" thereof was the amount of the anticipated gross income therefrom, less the anticipated cost of production, all of which was properly covered in the court's instruction 19. That part of the court's instruction 19, relied upon by appellee, is as follows:

"In fixing the plaintiff's damages if any you find, you may consider the quantity of land in question owned by the plaintiff and rendered unfit for planting during the farm season of 1947, if any, as proved by a preponderance of the evidence on that subject and you may then consider the kind, quantity and value of the crops, if any, which you

may find the plaintiff might reasonably have expected to plant, cultivate and harvest thereon, as proved by a fair preponderance of the evidence upon such subject matter, and you may consider the total value of the labor, seed and use of farm machinery and equipment that the plaintiff would reasonably have laid out and expended in preparing the ground so rendered unfit for planting, if you so find, and for planting, cultivating and harvesting such crops, if any, all as may be proved by a preponderance of the evidence on such matters, and, if you do so find, then you should deduct from the total fair value of the crops which the plaintiff was thus reasonably prevented from planting and raising and harvesting such total fair value of expense which you find that plaintiff might reasonably have laid out and expended as aforesaid; . . ."

The case of *Maddox* v. *Yocum* (1944), 114 Ind. App. 390, 397, 52 N. E. 2d 636, is cited by appellee as authority in support of the court's instruction 19. In that case the court said:

". . . However, the law does not exclude profits in determining the value of the loss of the use of the property merely because they are profits. They are generally excluded because by their very nature they are usually impossible of ascertainment to any reasonable degree of certainty. . . . So, where the loss of the use of property involves a known and established business, the value of such loss of the use of the property may be determined from the loss of profit if such profits can be shown with a reasonable degree of certainty."

The facts in the Maddox case, *supra,* and this case are grossly dissimilar. The Maddox case involved an established business with a relatively constant output of gasoline and oil. In that case the court said, at page 398: "The gross profit of appellee was a percentage of the business done. From the gross profit was de-

ducted only the cost of delivering the gasoline and oil in order to arrive at the net profit . . . Under these circumstances the profit could be ascertained with as reasonable accuracy" as could a calculation based upon "the fair rental value of the property on the market . . ."

The case at bar involved the loss of use of land for the production of corn which, in the proximate area, according to the record, varied from 35 to 135 bushels per acre, depending upon the weather conditions, and a multitude of extraneous factors. The certainty of ascertainment of profits which characterized the Maddox case, *supra,* would seldom exist and certainly does not exist in the case before us. Therefore, the rule of the Maddox case is not controlling as to the facts before us. In our opinion the Maddox case does not in any way controvert the general rule that the measure of damages for the loss of use of farm land for crops not planted is the fair rental value thereof on the market. 25 C. J. S., page 606, Note 6; *Lamkins* v. *International Harvester Co.* (1944), 207 Ark. 637, 182 S. W. 2d 203, 206; *Dilday* v. *David* (1929), 178 Ark. 898, 12 S. W. 2d 899, 900; *Gila Water Co.* v. *Gila Land & Cattle Co.* (1925), 28 Ariz. 531, 238 Pac. 336; *Garrett* v. *Haworth* (1938), 183 Okla. 569, 83 P. 2d 822; *Ft. Worth & D. C. Ry. Co.* v. *Speer* (Tex. Civ. App., 1919), 212 S. W. 762. Furthermore, appellee's contention that, as a measure of damages, "net profits" may be substituted for "rental value on the market," merely because the land is rented on a profit sharing contract, is not tenable with the authorities above cited.

We conclude, therefore, that appellant's tendered instruction 3 was proper and that the court's instruction 19 did not correct the error in refusing it.

Appellee contends secondly that error, if any, in the court's refusal to give appellant's tendered instruction 3 was waived by appellant by their failure to object to the court's instruction 19 which purportedly stated the law as to the measure of damages applicable to the issue in consideration. This contention is not tenable. Failure to object to an erroneous instruction given by the court on a particular subject does not waive error of the court in refusing to give a tendered instruction which correctly states the law upon that subject. *Pittman-Rice Coal Co.* v. *Hansen* (1947), 117 Ind. App. 508, 72 N. E. 2d 364; *Dulin* v. *Long* (1944), 115 Ind. App. 94, 54 N. E. 2d 652.

Finally, on the whole issue of damages, the appellee lays great stress upon the fact that the jurors viewed the premises. Appellee asks, "What better way can damage be shown than describing it in words and showing the truth of the claims by inspection?" In this regard the law is well established that anything the jurors saw cannot be considered as evidence and that damages can be recovered only upon evidence introduced at the trial, subject to proper instructions from the court. *Heady* v. *Vevay, Mt. S. & V. Tpk. Co.* (1875), 52 Ind. 117; *Pittsburgh, Ft. W. & C. R. Co.* v. *Swinney* (1877), 59 Ind. 100.

'The above rule is reaffirmed, notwithstanding the broad, unsupported statement on the subject found in the case of *Fletcher* v. *Kelly* (1906), 37 Ind. App. 254, 76 N. E. 813.

Judgment reversed. Court below is directed to grant a new trial.

NOTE.—Reported in 99 N. E. 2d 265.