**MSP COLLABORATIVE DEVELOPERS, Plaintiff-Appellee,**

**v.**

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND and Ray J. Benoit and Son, Inc., Defendant-Appellant.**

**No. 78–1005.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1978.

Decided April 18, 1979.

---

Charles W. Linder, Jr., Indianapolis, Ind., for defendant-appellant.

James E. Ayers, Crawfordsville, Ind., for plaintiff-appellee.

Before SWYGERT, LAY * and PELL, Circuit Judges.

PELL, Circuit Judge.

The defendant Fidelity and Deposit Insurance Company of Maryland appeals from the district court's judgment confirming an arbitration award of $456,455.96 plus interest in favor of the plaintiff MSP Collaborative Developers. The defendant argues that the arbitrator, John F. Sembower, committed legal error in his decision and that the district court therefore erred in not vacating the award.

In 1973 MSP Collaborative Developers (MSP), an architectural firm, entered a contract with R.J. Benoit and Son for the construction of a housing project for the elderly in Sullivan, Indiana. Fidelity Deposit and Insurance Company of Maryland (F&D) was surety for Benoit on its performance bond. In 1974 Benoit defaulted before completion of the construction. F&D arranged for the completion of the project, and MSP continued to serve as architect. The Sullivan, Indiana Housing Authority accepted the project in April 1975.

* Circuit Judge Donald P. Lay of the Eighth Circuit is sitting by designation.

MSP brought this action pursuant to the Indiana Uniform Arbitration Act, Indiana Code § 34–4–2–1 *et seq.* in state court to compel arbitration pursuant to the construction contract. F&D removed the action to the federal district court on the basis of diversity of citizenship. Thereafter F&D moved to strike the application for arbitration and to dismiss the cause contending that there was no agreement to submit the controversy to arbitration. The district court ruled against F&D and this ruling has not been raised on appeal. The arbitrator, after pre-trial discovery, conducted some twenty days of hearings during which evidence was presented and argument made by counsel. Thereafter the parties submitted briefs to the arbitrator on their respective positions as to the facts and the law. The arbitrator found in favor of MSP and awarded damages of $456,455.96, including $160,000 for "loss of opportunity."

Objecting to this item of damages, F&D filed in the district court a motion under Indiana Code § 34–4–2–13 to vacate the arbitration award and to order a rehearing. The district court denied this motion and entered judgment confirming the arbitration award.

The arbitrator issued a written opinion with the award. The "loss of opportunity" damages were explained by the arbitrator in this way:

> With respect to "Loss of Opportunity," the Indiana Supreme Court has held "lost business" is an element of damages when it can reasonably be inferred to have been within the contemplation of the parties when they entered into their contract. *City of Terre Haute v. Hudnut* (1887) 112 Ind. 542, 13 N.E. 686. Just because it may be a relatively new undertaking does not bar such a recovery. *Standard Machinery Co. v. Duncan Shaw Corp.* ([1 Cir.] 1953) U.S.C.A., 208 F.2d 61. Nor is it necessary that the parties ever have considered the question of damages for the defaulting party, if they should reasonably have expected them to flow therefrom. 22 *Am.Jur.Damages,* Sects. 57, 58. The details of the losses may be

determined at trial. Against these authorities, *Fidelity* cites none. . . .

The most difficult of all to evaluate is "Loss of Opportunity." This is the counter-part of the "Lost Profits" allowed, both in *Miracle Mile,* [*Miracle Mile Shopping Center v. National Union Indemnity Co.,* 299 F.2d 780 (7th Cir. 1962)], and *Continental Realty Corporation,* [*Continental Realty Corp. v. Andrew J. Crevolin Co.,* 380 F.Supp. 246 (S.D.W.Va.1974)]. Citing *City of Terre Haute v. Hudnut,* and others, 112 Ind. 542 (1887), the Plaintiff refers to the long-recognized doctrine of contracts that in a breach, the injured party may receive those damages which were within the contemplation of the parties when they entered their agreement. This is the doctrine, of course, of the classic old case of *Hadley v. Baxendale,* 9 Exch. 341, 156 Eng.Reprint 145, 22 *Am. Jur.*2d § 561, which is almost of the vintage of the Rule in Shelly's [sic] case. Interestingly enough, it does have application to this matter, because Benoit knew of MSP Developers' ambition to use this project as a prototype and obtain others, as Gary Benoit testified.

Fidelity pooh-poohs Plaintiff's claim, saying, in part, that after the debacle of this project, they had no "opportunity" left to lose! However, this only goes to show how damaging Benoit's default was to MSP Developers where it could hurt them most—their professional standing. It is like evaluating one's reputation in a libel or slander suit. Fidelity says that none of the three individuals comprising MSP Developers paid an income tax of more than $25,000.00, but the Plaintiff points out that this reflected the serious losses they suffered on this project, and that the incomes normally might be expected to run as high as $135,000.00. While the HUD program ceased, there were other Governmental projects available.

The claim is so speculative, so necessarily conjectural and nebulous, as to defy calculation, but there is the established principle of damage law, that simply because damages are difficult to figure, they should not be denied.

The Arbitrator has attempted to resolve this dilemma by carefully studying the arguments pro and con by the parties. The profits which MSP Developers would have realized on this project, had it gone without a hitch, was somewhat over $40,000.00. While MSP Developers was a new organization, the individuals comprising it are duly licensed architects with good professional backgrounds. Their design for the Sullivan project should reflect credit rather than discredit upon them, regardless of the misfortunes and ineptitudes which beset the contractors charged with carrying them out. Taking everything into account, the Arbitrator finds that they had a reasonable expectancy of $160,000.00, and he will so award. This contemplates additional projects and that seems to be the realistic expectation.

The defendant F&D opposes this item of damages in several respects all of which ultimately bottom on the assertion that the arbitrator misapplied the controlling law. Thus, F&D argues that the item of damages is "unprecedented" under Indiana law, giving in its brief grounds for distinguishing decisions relied on by the arbitrator.

In its brief F&D also suggests that the lost opportunities were not foreseeable and therefore not compensable under the rule of *Hadley v. Baxendale,* 9 Exch. 341, 156 Eng. Rep. 145, and that even if the loss were foreseeable, the amount was so speculative that it defied calculation within a reasonable degree of certainty, citing *Maddox v. Yocum,* 114 Ind.App. 390, 52 N.E.2d 636 (1944). Finally, F&D argues that "loss of opportunity" on other contracts was already covered by damages compensating MSP for

additional time and expenses attributable to the delay in completing the housing project. According to F&D, the "loss of opportunity" damages constitute double recovery and are therefore contrary to law.

■ Our role in reviewing the arbitration award, however, is confined to determining whether the defendant has shown one of the grounds for challenge permitted by the Indiana Uniform Arbitration Act.[1] The Act does not classify legal error as a ground for vacating the award, but the defendant has argued vigorously that, under certain circumstances, legal error comes within Indiana Code § 34-4-2-13(a)(2), which requires the court to vacate the award when "there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party."

■ The purpose of the Uniform Arbitration Act is to afford the opportunity to reach a final disposition of differences between parties in an easier, more expeditious manner than by litigation. *Pillott v. All-state Insurance Co.,* 48 Ill.App.3d 1043, 6 Ill.Dec. 778, 363 N.E.2d 460 (3d Dist. 1977) (applying Ill.Rev.Stat. ch. 10, § 112 of the Illinois Uniform Arbitration Act). To accomplish this purpose, the Uniform Act strictly limits judicial review of arbitration awards. F&D seeks, however, to transform an allegedly erroneous view of the law into a statutory ground for vacating the judgment by arguing that the error of law raises an inference of "evident partiality" on the part of the arbitrator. Assuming arguendo that the arbitrator did in fact

1. The Indiana Code provides:

> 34-4-2-13 Vacating an award.—(a) Upon application of a party, the court shall vacate an award where: (1) The award was procured by corruption or fraud; (2) there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party; (3) the arbitrators exceeding [exceeded] their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; (4) the arbitrators refused to postpone the hearing upon sufficient cause being

> shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 6 [34-4-2-6] of this act, as to prejudice substantially the rights of a party; or (5) there was no arbitration agreement and the issue was not adversely determined in proceedings under section 3 [34-4-2-3] and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

commit legal error, this argument nevertheless must fail.

Although the Indiana courts have not applied this section of the Uniform Act, the Illinois courts have held that section 112 of the Illinois Uniform Arbitration Act, Ill. Rev.Stat. ch. 10 [2] requires a specific allegation of bias or prejudice on the part of the arbitrator. *Sweet v. Steve's Cartage Co.,* 51 Ill.App.3d 913, 8 Ill.Dec. 724, 365 N.E.2d 1110 (3d Dist. 1977); *Pillott v. Allstate Ins. Co., supra; Country Mutual Insurance Co. v. Kuzmickas,* 2 Ill.App.3d 313, 276 N.E.2d 357 (1st Dist. 1971). Furthermore, without specific allegations of bias, the size of the award does not raise an inference of partiality, *Sweet v. Steve's Cartage Co., supra,* and neither does an arbitrator's consistent reliance on one party's evidence and interpretation of the law. *Bell Aerospace Co. v. Local 516, UAW,* 500 F.2d 921 (2d Cir. 1974) (refusing to vacate on grounds of "evident partiality" as provided in the federal arbitration statute, 9 U.S.C. § 10(b)). The defendant has made no showing of bias or predisposition on the part of the arbitrator other than the arbitrator's adverse decision, so this ground for challenge must fail.

We note, however, that "manifest disregard" for the law has been accepted by some courts as a basis for vacating an arbitration award, although, like the Indiana law to be applied here, the statutes involved have not expressly set forth this ground. *See, e. g., Sobel v. Hertz, Warner & Co.,* 469 F.2d 1211 (2d Cir. 1972) (applying the federal arbitration statute); *Sweet v. Steve's Cartage Co., supra,* (applying the Illinois Uniform Arbitration Act). The apparent source of this rule is the dictum of the Supreme Court in *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953):

> [T]he interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal

courts, to judicial review for error in interpretation.

346 U.S. at 436–37, 74 S.Ct. at 187–188. The Supreme Court did not attribute the manifest disregard exception to any particular section of the federal arbitration statute, and the continuing validity of this rule has since been questioned by the courts, including this one, when asked to apply it. *National Railroad Passenger Corporation v. Chesapeake & Ohio Ry.,* 551 F.2d 136, 143 (7th Cir. 1977); *I/S Stavborg v. National Metal Converters,* 500 F.2d 424, 430–32 (2d Cir. 1974). Determining the difference between "manifest disregard" and mere "misinterpretation" of the law will be almost impossible in some circumstances.[3]

Nevertheless, even though after reading the briefs and hearing arguments and noting the Indiana law applicable to the damages item here involved we have not been convinced that the arbitrator incorrectly interpreted the law of that state, and notwithstanding the uncertain status of the manifest disregard standard, we will follow the lead of this court in *National Railroad, supra* at 143, and assume "without deciding that in an appropriate case an arbitration award may be vacated for a 'manifest disregard' of applicable law." On that assumption the record in this case gives us a basis for evaluating the soundness of the award. The parties fully briefed for the arbitrator the issue we are asked to review here. Furthermore, the arbitrator's lengthy opinion shows a conscientious and studied examination of the case law and it answers the arguments presented by F&D in its brief to the arbitrator. The opinion shows neither disregard for nor unfamiliarity with the applicable Indiana authorities argued by the parties, and therefore gives us no ground to order that this award be vacated. To interpret *Wilko* as requiring extensive inquiry by the judiciary into the merits of the issues would

2. Ill.Rev.Stat. ch. 10, § 112 is identical to the Indiana Code section at issue here. The authority of the other courts is very persuasive here in the absence of relevant Indiana decisions. Indiana Code § 34–4–2–21.

3. The application of this rule is made extremely difficult by the lack of a requirement that arbitrators give reasons for their decisions, a rule designed to lower the cost of arbitration and to expedite decisionmaking. *Sobel v. Hertz, Warner & Co., supra.*

defeat the salutary purpose of arbitration. Losing parties could delay the final resolution of disputes by challenging the judiciary to distinguish between awards which are merely wrong and those that are, at least in the eyes of the defeated advocate, very wrong. In the absence of a statutory directive to engage in this legal hairsplitting, we decline to follow this course.

We have not deemed it necessary to give significance to the final words of Section 34–4–2–13 of the Indiana Code "that the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." Although it might well be argued that this phrase further emphasizes the public policy favoring finality in arbitration proceedings, we here have been satisfied that there has been no manifest disregard for the law.

Accordingly, the judgment of the district court confirming the award is affirmed.

AFFIRMED.